Baker v. Leka.

---

Baker et al. v. Leka.

1. *Drainage Rights and Burdens.*—In respect to the rights and burdens of drainage, individuals hold their ownership in land in accordance with the natural conformation of the ground. The right of the owner of the dominant heritage to drainage is based wholly on the principle that nature has ordained such drainage. He may cast upon the servient heritage such water as naturally there descends, and may in the exercise of good husbandry collect such water by ditches and discharge it with increased flow and in greater quantities upon the lower lands than would in the course of nature occur, provided it be discharged into a natural channel or watercourse.

2. *Drainage—Burdens of the Servient Proprietor.*—This burden the owner of the lower land must accept, but he is not to be burdened with or damaged by the discharge of water upon his premises the flow of which has been by the owner of the upper land directed from its natural course by ditches and thus brought to his land, when in the course of

nature such water, but for the artificial ditches or drains, would have flowed in another direction.

3. *Right of Action—Future Damages.*—Whether a right of action for damages occasioned by the overflow of water in a ditch arises upon the construction of the ditch within the meaning of the statute of limitations depends upon whether the ditch is to be regarded as a permanent structure. If permanent, the owner may upon its construction institute a suit for and recover not only present but future damages, and such recovery will operate as a bar to all future actions by such owner or by any one holding under or through him.

4. *Ditches, When Permanent Structures—Statute of Limitations.*—When a ditch by construction or by act of the parties becomes a permanent structure, a failure to bring'an action for damages occasioned by it within the statutory period, operates as a bar to a recovery by the owner or his grantees.

5. *Ditches, When Permanent Structures in a Legal Sense.*—The question as to when a ditch is a permanent structure in a legal sense is not to be determined from a consideration alone of its enduring character, or that, if not changed by the hand of man, it would be likely to continue forever. To be permanent in a legal sense a structure must, in addition to being permanent or enduring within itself, be such that its continuation is lawful, because if not lawful it is subject to be removed or abated by a legal proceeding, and therefore can not be deemed permanent.

6. *Nuisance, When a Permanent Source of Injury.*—A nuisance which may be abated by law is not regarded as a permanent source of injury, but as a continuing source, and' successive actions for damages occasioned by it may be maintained from time to time as such damages are inflicted.

7. Supreme Court Decisions, Randall v. Cooper, 59 Ill. 317, explained, etc.

**Memorandum.**—Action to recover damages for a nuisance. Appeal from a judgment rendered by the Circuit Court of Sangamon County; the HON. JACOB FOUKE, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892. Opinion filed October 17, 1892.

The opinion of the court states the case.

## APPELLANTS' BRIEF.

Appellee had no legal right to change the course of the surface water from 280 acres, or any part of this land, and throw it upon the lands of appellants, while in a state of nature it ran in other directions, and is liable for the damage done. J., N. W. & S. E. R. R. Co. v. Cox, 91 Ill. 501; Kankakee & Seneca R. R. Co. v. Horan, 17 Brad. 650; Wood on Nuisances, 404, 406; Gould on Waters, Secs. 271

Baker v. Leka.

and 536; Winkler v. Meister, 40 Ill. 349; Peck v. Harrington, 109 Ill. 619.

"Each overflow caused by the negligence or want of skill is an independent wrong, and a cause of action for the damages resulting to crops or other property of the rightful possessor of the land overflowed." The judgment of lower court was affirmed, and, on a "certificate of importance," went to the Supreme Court and the judgment was by it affirmed. O. & M. Ry. Co. v. Wachter, 123 Ill. 440; C., B. & Q. R. R. Co. v. Schaffer, 26 Ill. App. 284.

"The owner of the overflowed land may maintain successive actions when, as in the case of the destruction of crops from year to year, the wrong does not involve the destruction of the entire estate or its beneficial use, and the injuries in different years may be included in a single count." Gould on Waters, 210.

"When successive actions lie, the statute of limitations is not a bar to an action for the continued flooding of land within the statutory period, although the first flowage may be barred. The period of limitation does not begin until actual injury is suffered. Where a stream was obstructed wrongfully, and several years later this act caused the plaintiff's land to be overflowed, it was held that the statute of limitations ran only from the latter event." Gould on Waters, 408.

CONKLING & GROUT, attorneys for appellants.

## APPELLEE'S BRIEF.

There is no question as to the amount of testimony adduced in the trial of this cause; indeed, it was voluminous. The doctrine they are doubtless urging is that "where there is a scintilla of evidence in support of a case," it should be left to the jury. This is a dangerous rule, is called the old rule, and is being departed from by nearly every respectable court in the Union. 2 Thompson on Trials, Secs. 2248 and 2249.

It was for the trial court to pronounce the law, on motion

to exclude, and to say whether there was any evidence or not in support of material issues; for the court to say whether there was a scintilla of evidence or not; for the court to say whether there was evidence tending to prove legal damages. Greenleaf's Ev., Sec. 49; 1 Thompson on Trials, Sec. 318.

"A jury can not be permitted to find there is evidence of a fact, when there is not any. The evidence must have legal weight. There is no practical or logical difference between no evidence, and evidence without legal weight." Thompson on Trials, 1604; Conner v. Giles, 76 Me. 132, 134; Phillips v. Dickson, 85 Ill. 15.

B. GALLIGAN and WM. F. HERNDON, attorneys for appellee.

OPINION OF THE COURT, the Hon. Carroll C. Boggs, Judge.

This was an action on the case, brought by the appellants to recover damages alleged to have been occasioned to their land and crops in the years 1889 and 1890, by water, illegally, as they claim, caused to flow upon their premises by the appellee. The appellee pleaded not guilty and that the cause of action did not accrue within five years next before the commencement of the suit. A jury was impaneled, and the evidence for the appellants heard, at the close of which, on the motion of the appellee, the court instructed the jury that the evidence was not sufficient to entitle the plaintiff to recover, and directed that a verdict for the appellee be returned, which was done, and judgment entered accordingly. This is an appeal from that judgment.

The evidence developed these facts: In 1888, the appellants purchased a body of improved and cultivated lands adjoining, upon the east and northeast, a large body of like lands belonging to appellee. There was then upon the lands of the appellee a ditch, constructed by him some twelve years before, which passed, in a northeasterly direction, through an elevation in his lands to the line of the appellants' land. This ditch brought to and emptied upon

appellants' field the water from some 280 acres of appellee's land, which, in the course of nature, would have flowed in another direction, and not to or upon the field of the appellants. The ditch, however, passed through and collected the water upon some eighty acres of other land of the appellee, the natural flow of which was to and upon the appellants' farm. In the season of 1889 and 1890, this ditch cast upon the appellants' field the water thus naturally and properly flowing toward it, and also the water from the other and larger body of land, which would not, but for such ditch, have flowed there.

These combined waters flooded and damaged the lands and crops of the appellants. The appellee contends that such facts did not create a right of recovery in the plaintiff, and this is the sole question for determination. This involves an examination of the law governing the rights and powers of landed proprietors in draining their lands. While there may be found, in the decisions of the courts of other States conflicting opinions, we think the state of the law is not uncertain in Illinois.

In our State, as respects the rights and burdens of drainage, individuals hold their ownership in land in accordance with the natural conformation of the ground. The right of the owner of the dominant heritage to drainage is based wholly on the principle that nature has ordained such drainage. He may cast upon the servient heritage such water as naturally there descends, and may, in the exercise of good husbandry, collect such water by ditches and discharge it, with increased flow and greater quantity, upon the lower lands, than would in course of nature occur, provided it be discharged into a natural channel or watercourse. This burden the servient proprietor must accept and provide against. The owner of the lower lands is not, however, to be burdened with or damaged by the discharge of water upon his premises, the flow of which has been by the dominant proprietor diverted from its natural course by ditches, and thus brought to his land, when in the course of nature such water, but for the artificial ditches or drains,

would have flowed in another direction, and not upon his land. Gormley v. Sanford, 52 Ill. 158; J., N. W. & S. E. R. R. Co. v. Cox, 91 Ill. 503; Peck v. Harrington, 109 Ill. 611; Groff v. Aukenbrandt, 124 Ill. 51. We reach, then, the conclusion, that upon the construction of this ditch a right of action arose for the recovery of any damage occasioned by water improperly brought to and discharged by it upon the lower lands.

Counsel for appellee urge that if such right of action did arise it was for the recovery of all damages, both present and prospective, and that the owner of the lands at that time might have sued for and recovered all damages, past and future, and that such right of action existed for five years and became then barred by the statute of limitations, and that therefore this action can not be maintained.

Whether such right of action for future damages then arose depends upon whether the ditch is to be regarded as a permanent structure. If permanent, the then owner might have at once instituted suit for and recovered not only present but future damages, and such recovery would have operated as a bar to all future actions by such owner or by any one holding under or through him. A failure to bring such action within the statutory period would operate to bar a recovery by the then owner or his grantees. C. & A. R. R. Co. v. Mahr, 91 Ill. 312; 5 Amer. and Eng. Ency. of Law, page 20.

It then became important to ascertain whether the ditch in question was in a legal sense permanent. This is not to be determined from a consideration alone of its enduring character, or that if not changed by the hand of man it would likely continue forever. To be permanent in a legal sense a structure must, in addition to being permanent or enduring within itself, be such that its continuation is lawful; because if not lawful it is subject to be removed or abated by a legal proceeding and therefore can not be deemed permanent. K. & S. R. R. Co. v. Horan, 131 Ill. 288.

The ditch as constructed by the appellee extended through

an elevation in his land, and brought through this ridge or elevation, water which, in the course of nature, had its flowage in another direction.

It was therefore unlawful and an invasion of the right of the servient proprietor, and being so, constituted a nuisance (16th Amer. and Eng. Ency. of Law, 924 to 925) and as such was subject to abatement. C., B. & Q. R. R. v. Shaffer, 124 Ill. 121.

A nuisance which may be abated by law is not regarded as a permanent source of injury but as a continuing nuisance. Successive actions for damages occasioned by it may be maintained from time to time as such damages are inflicted. 16 Amer. & Eng. Ency., page 986 and 987; C. & E. I. R. R. v. Lord, 118 Ill. 203; O. & M. R. R. v. Watcher, 123 Ill. 440.

It is true that cases are to be found where the owners of land have treated a structure as a source of permanent injury and brought suit for and recovered both present and future damages, though such structure was unlawful and subject to abatement by legal action. When a structure is in its nature permanent it seems that one damaged thereby may elect to treat it as permanent in law, though he might abate it as a nuisance and may sue for and recover damages, present and prospective. If he does so recover he is to be regarded as having consented to its continuation and both he and others holding through or under him are denied the right of further suit for the recovery of damages.

These cases are not, however, authority in support of the appellee's plea of the statute of limitations, for such actions are not barred by the operation of the statute of limitations, but by the application of just and equitable principles of estoppel and wholly without regard to any period of time. McConnell v. Kebbe, 29 Ill. 443; C. & E. I. R. R. v. Loeb, 118 Ill. 203.

Recovery by subsequent action in such cases is denied because the party damaged sued upon and treated the structure as permanent and recovered damages upon the theory that it was to be maintained forever.

Having done so he is held to have consented to its continuance and to have been compensated therefor by the assessment of future damages in the first action. He can not, nor can any one holding through him, be heard to urge that it is not permanent, upon familiar principles of estoppel. No such prior action was brought by any owner of this land, and for that reason many authorities cited by appellee's counsel have no application to this case.

It must be admitted that expressions of the court to be found in the opinion in the case of Randall v. Cooper, 59 Ill. 317, seem to announce that when a wrongful act is done which produces an injury, a right of action at once arises for the recovery of past and future damages. In that case the structure complained of was a flowering mill, lawfully constructed and consequently permanent in a legal sense. The expressions referred to were not necessary to the proper determination of the rights of the parties to the case, and when considered in connection with the later opinions of the court which we have cited, must be given a restricted meaning. Such expressions must be accepted as a recognition of the right of a party injured by a wrongful act or structure in its nature permanent, to elect to consider the same permanent, and sue for and recover damages upon it as such.

If he does, he and his privies will be, as we have seen, estopped from afterward asserting that the structure is not permanent. Thus understood, the expressions referred to are not in conflict with other rulings of the Supreme Court, which we have accepted as stating the correct rule.

Counsel for appellee suggest that appellants purchased their land with a permanent nuisance existing upon it, and are presumed to have paid only the value of the property as thus situated, and therefore had no right of action. This might be true if the nuisance was a permanent one. We have seen that it is not. It was subject to abatement by direct legal proceeding to that end, or successive recoveries of damages may be resorted to to enforce its abatement by the voluntary act of the appellee, to avoid such recoveries. C. & E. I. R. R. Co. v. Lord, 118 Ill. 203.

C. & A. R. R. Co. v. Matthews.

The presumption, then, is, that appellants purchased in view of the rights thus given them by law. The evidence also tends strongly to show that the appellee promised the appellants before they received title to the lands that he would be at the expense of putting in tile in appellants' land to carry away the water coming from his ditch, and that he failed and refused to do so. This being true, it seems clear that appellants did not, as a matter of fact, buy the lands with the understanding that it was subject to the burdens imposed upon it by the ditch in question.

The appellee contends that, while the proofs may show that the water coming from the ditch inflicted injury and loss upon the appellants, it can not be determined from the evidence to what extent such damages were attributable to the waters which, in the course of nature, would not have flowed there, and that the appellee is only liable for damages occasioned by such waters.

How far one who thus causes injuries may demand the exact ascertainment thereof need not now be determined. We think there are data in the evidence from which such damages might have been ascertained with reasonable certainty. Aside from this, the appellants established, by the evidence, the fact that their legal right had been violated, and this entitled them to recover nominal damages and costs in vindication of their right. 5th Amer. & Eng. Ency. of Law, page 4.

We are constrained to the opinion that the case should have been submitted to the jury for their decision.

The judgment must be reversed and the cause remanded.