(No. 13580.—Appellate Court reversed; circuit court affirmed.)

JOE CATELLO, Appellant, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed June 22, 1921.*

1. NUISANCES—*one recovery is bar to future actions for permanent nuisance.* In an action brought for the deterioration in the value of real estate occasioned by a nuisance of a permanent character, or which is treated as permanent by the parties, all damages for the past and future injury of the property may be recovered if not already compensated for, and one recovery in such case is a bar to all future actions.

2. SAME—*after construction of permanent nuisance a subsequent purchaser cannot maintain action for damages.* A right of action for damages arising from the construction of a permanent nuisance, such as a railroad, vests only in the owner of the lot or land immediately upon the construction of the nuisance, and a subsequent grantee of the land cannot maintain an action for the proper use and operation of the railroad or other permanent structure after his purchase; but a different rule prevails when the subsequent owner seeks to recover for negligence and consequent damages in the operation.

3. SAME—*when a coal chute gives private party an action for damages as a nuisance.* A coal chute on a right of way of a rail-

road company is such a structure as will give a private party an action for damages when it becomes a nuisance to him, causing him special damages as distinguished from damages to the public generally, where the private owner or his predecessor in title has not been compensated for the injury.

4. SAME—*one purchasing a lot adjacent to railroad is entitled to damages caused by coal chute constructed after his purchase.* Where a person conveys a right of way for a railroad it will be conclusively presumed that all ordinary damages to the land, past, present and future, were included in the consideration paid for his conveyance or in the assessment of damages in case of condemnation; but as damages for the subsequent construction of a coal chute on the right of way are not recoverable in condemnation proceedings, one who purchases from the grantor a lot adjacent to the right of way is entitled to damages caused by the necessary and proper operation of a coal chute built on the right of way after he purchased the lot.

5. APPEALS AND ERRORS—*when finding of fact by the Appellate Court does not preclude Supreme Court from settling case on question of law.* A finding of fact by the Appellate Court, which the Supreme Court finds the plaintiff was not required to charge or prove but on which the Appellate Court bases its judgment for the defendant, does not preclude the Supreme Court from finding for the plaintiff on questions of law which are presented by instructions of the defendant asking for a directed verdict and for a holding that the declaration did not state a cause of action or that the plaintiff was not entitled to recover under the facts proved.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Franklin county; the Hon. J. C. EAGLETON, Judge, presiding.

R. E. HICKMAN, and LAYMAN & JOHNSON, for appellant.

W. H. HART, and W. W. HART, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant filed his declaration against appellee in the circuit court of Franklin county charging damages to his property by reason of the locating and operating on appel-

lee's right of way at a point about one hundred feet west of appellant's dwelling house a coal chute, which is filled and re-filled with coal by means of a steam shovel operated by a locomotive engine, the operation of which produces intolerable noises and precipitates great quantities of coal, dirt, dust, cinders, ashes and noisome vapors, which are carried and cast by the wind upon the appellant's premises. Two trials were had. The verdict in the first trial for $600 was set aside, and on the second trial the jury returned a verdict in the sum of $500, upon which judgment was rendered. On appeal to the Appellate Court for the Fourth District the judgment was reversed with the following finding of facts: "We find as an ultimate fact in this case that the coal chute in question was not shown to have been located in a populous part of the city of Christopher; that no negligence was shown on the part of the appellant in the operation of the said coal chute, and that the same was located on its right of way and operated by appellant in the usual and necessary operation of its business." A certificate of importance was granted and the case is appealed.

The material facts in the case are not controverted and are in substance the following: In May, 1908, appellant became the owner of lots 24 and 25 in block B, in Horn, Dimond & Mitchell's First addition to Christopher, Illinois. Two months later he improved the lots by building thereon a five-room dwelling house, with out-buildings, and made such improvements as are commonly made for a dwelling house of that character and has since occupied the same as a residence. Clem Pundsack, the common source of title, owned the forty acres of land on which said addition to Christopher is located. In July, 1905, he and his wife conveyed by warranty deed to the Northern and Southern Illinois Railroad Company a strip of land one hundred feet in width through said forty-acre tract for a right of way for a steam railroad. That railroad company in 1906 completed and began operating the railroad over the right of

way, which adjoins appellant's property on its west line. In that year it leased its right of way to appellee, and later made a deed to the latter of its right of way adjacent to the property of appellant and elsewhere, and appellee has operated, and is now operating, the railroad on the right of way as a steam railroad. In 1915 appellee erected upon the right of way and some land adjacent thereto a round-house, and in 1916 erected the coal chute in question on the right of way near the roundhouse and about one hundred feet west of appellant's dwelling house. The coal chute has a capacity of about 135 tons, is operated by hoisting the coal into it from railroad cars by means of a steam shovel, and by force of gravity the coal runs from the chute into the engine tenders through a passageway or apron. This chute is operated at all times, day and night. When the wind is blowing from a westerly direction coal dust settles on appellant's building and premises and gets into his house when the windows or doors are open, and is the source of considerable annoyance to the occupants thereof and damages the premises and things in the house by blackening the same with coal dust. The evidence conclusively establishes, and without dispute, that the coal chute is a nuisance as operated and that its construction and operation have depreciated the market value of appellant's premises $500 or more.

The first count of the declaration charges that appellee constructed this coal chute in a thickly populated portion of the city, but the evidence discloses that there were only a few houses in the near vicinity of it. The second count of the declaration is similar to the first, except that it makes no charge that the chute is in a thickly populated portion of the city. Neither count charges negligent construction or operation of the coal chute and no attempt was made to make such proof.

Appellant contends that, assuming the facts to be as found by the Appellate Court, that court erred in holding

that there was no liability under the facts proven; that the damages to his premises are not such as unavoidably follow and necessarily attend the ordinary operation of a railroad; that the right of appellee to operate its railroad over its right of way did not give it the right to construct and operate this coal chute to the damage of appellant without paying him for the same, and that it was not necessary for him to aver or prove negligence in constructing or operating the chute or that it was located in a populous part of the city. It is appellee's contention that there being no negligence charged or proved in the case appellant has no right to damages, for the reason that the common source of title, Pundsack, was compensated at the time of the purchase of the right of way by appellee's predecessor, the Northern and Southern Illinois Railroad Company, for all damages which thereafter might arise to land not taken by reason of the operation of its railroad and the construction and operation of its coal chute, which is necessary to the operation of its trains.

Had the coal chute in question been constructed and in operation before appellant acquired title to his premises the facts proven in this record would unquestionably sustain the contention of appellee. The railroad structures on the right of way that were constructed there for the ordinary purposes of a railroad are considered in law permanent structures authorized by legislative grant. The coal chute in question is treated by the parties to the suit as a permanent or legal structure, as no negligence was charged in its construction or operation, and the damages recovered in the suit are permanent damages for all present, past and future injury to the property, being the depreciation in the cash market value of the premises by reason of the construction and operation of the coal chute. If this judgment is allowed to stand no further action for damages can be maintained by appellant except for negligent operation of the coal chute. In an action brought for the deterioration

in the value of real estate occasioned by a nuisance of a permanent character, or which is treated as permanent by the parties, all damages for the past and future injury of the property may be recovered if not already compensated for, and one recovery in such case is a bar to all future actions for damages. Such right of action is not transferable with the land, and is only vested in the owner of the lot or land immediately upon the construction of the nuisance causing damages. A subsequent grantee of the lots or land cannot maintain an action at all for the proper use and operation of a railroad or other permanent structure after his purchase. (*Chicago and Eastern Illinois Railroad Co.* v. *Loeb*, 118 Ill. 203; *Galt* v. *Chicago and Northwestern Railway Co.* 157 id. 125.) A different rule prevails when the subsequent owner seeks to recover for negligence and consequent damages in the operation.

The coal chute was constructed by appellee after it acquired the right to operate its railroad and after appellant purchased the land or erected his dwelling. It is proved to be a common law nuisance to appellant and caused the damage in question solely. A coal chute on a right of way of a railroad company is such a structure as will give a private party an action for damages when it becomes a nuisance to him, causing him special damages as distinguished from damages to the public generally, where the private owner or his predecessor in title has not been compensated for the injury. (*Wylie* v. *Elwood*, 134 Ill. 281.) It is not contended that appellant has been compensated for his injury. It is contended by appellee that appellant's predecessor in title must be conclusively presumed to have been paid this damage when he made his deed to the right of way, just as conclusively as if condemnation proceedings had been had and the right of way thereby acquired and paid for. That proposition is based on the rule of law that where a person conveys a right of way for a railroad it will be conclusively presumed that all damages to the

land, past, present and future, were included in the consideration paid for his conveyance, the same as assessment of damages in a condemnation would be presumed to embrace. (*Chicago, Rock Island and Pacific Railway Co.* v. *Smith,* 111 Ill. 363.) But conceding this rule of law as to deeds conveying a right of way for railroad purposes, there is no showing that Pundsack was paid for this damage. This is so because damages for such a structure as a coal chute are not recoverable in condemnation proceedings, although such a structure may be convenient or necessary to the proper operation of the railroad. If such damages were so recoverable, then in every condemnation for right of way the owner could recover damages for the location of a coal chute on the railroad right of way opposite his premises. Such a rule would be ruinous to railroads in condemnation proceedings, as it would be unreasonable to require them to locate in advance every coal chute they might need for all time and bind them by such location. It is clear that such damages are not provable in condemnation proceedings, and that neither appellant nor Pundsack has ever been or can be presumed to have been compensated for the damages in question.

Coal chutes, sand bins, roundhouses, railroad switches not constructed in switch yards for passenger depots or freight houses, and other structures erected for similar purposes and objects, are a class of structures used by railroad companies that are merely incidental to the public service which they are authorized by legislative grant to perform. The selection of sites for the erection of such structures on their rights of way are made by the railroad companies themselves. They may locate and erect them in the interest of the public at places where their operation will not damage private property, or they may regard their own interests solely and locate them in populous centers, where they will do great damage to property. In the location and use of such structures railroad companies are treated by

high and respectable courts in this country as acting in their private capacity as distinguished from their public capacity, for which they were organized and chartered. Such courts consider railroad companies as operating in their public capacity when they are improving, changing or extending their lines by making necessary changes in grades, increasing the number of their tracks or otherwise providing for any and all increase of the business that time and public progress of the country may bring to them. So, also, they are considered as acting in their public capacity when they are increasing or making proper changes in their depots or freight houses, in their switch yards around depots and freight houses, in the character and size of the engines and cars that conduct the public travel and freight, for handling which they were chartered. Such courts hold that when a railroad company is acting in its private capacity it is liable for all damages that may occur to the property of abutting owners, regardless of the question of negligent operation or construction. They also hold that such companies are not liable when acting in their public capacity, as already explained. Other courts hold, or seem to hold, that they are not liable when acting in either capacity, public or private, where the adjacent owners of property have recovered their damages in condemnation proceedings or are presumed to have been paid for their damages in deeds for the rights of way. For a full discussion of both of these theories for recovery and non-recovery we refer to the cases of *Killam v. Norfolk and Western Railway Co.* (Va.) 6 A. L. R. 701, and *Southern Railway Co. v. Fisher,* (Tenn.) 6 id. 717, and the voluminous notes following those two cases. We need not discuss the distinctions made by the Virginia and Tennessee courts with reference to railroads when acting in their public and private capacities, as above explained, or the opposite theories of other courts, or to distinguish various decisions of this court with reference to similar questions.

Section 2 of article 2 of our constitution provides that private property shall not be taken or damaged for public use without just compensation. This is a provision of our constitution that no legislative act and no decision of any court of this State can nullify. The appellant has charged, and proved without question, that the structure of which he complains is a common law nuisance and that he has been damaged thereby in the sum of $500 or more. To deny him compensation for this damage is to deny him his constitutional right guaranteed by the constitution. There is no theory upon which it can be said that this damage was paid for in the consideration paid by appellee's predecessor to Pundsack. Pundsack sustained no such damage, as the coal chute was not erected until after he had parted with his title. The construction and operation of the coal chute occurred after appellant acquired and improved his property. He was entitled to the judgment and the Appellate Court erred in reversing it.

As appellant was not required to charge negligence in the construction or operation of the coal chute and was not required to prove that it was located in a populous part of the city, the finding of fact by the Appellate Court does not preclude this court from considering and settling the case on questions of law. Only questions of law were raised by appellee, which we have settled against its contention. Such questions of law were presented by instructions of appellee asking for a directed verdict in its favor, and asking the court by various instructions to hold that the declaration did not state a cause of action, and, in substance, that appellant was not entitled to recover under the facts proved on the trial.

The judgment of the Appellate Court is therefore reversed and the judgment of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*