Margaret T. Kugel and Peter A. Kugel, Appellees,
v. Village of Brookfield, Appellant.

Gen. No. 42,073.

350

Heard in the second division of this court for the first district at the December term, 1941. Opinion filed March 8, 1944.

Lawrence Morell Gross, of Chicago, for appellant; Francis M. Cooper and Reuel H. Grunewald, both of Chicago, of counsel.

Guy C. Guerine of Melrose Park, and McKinley, Price & Quindry, of Chicago, for appellees; Guy C. Guerine, of Melrose Park, and Paul E. Price, of Chicago, of counsel.

Mr. Justice Sullivan delivered the opinion of the court.

This is an action at law brought by plaintiffs, Margaret T. Kugel and Peter A. Kugel, against defendant, Village of Brookfield, for the alleged wrongful creation and operation of a dump on their premises, whereon it deposited garbage and other waste materials, as a result of which it is claimed that their real estate depreciated in value and they were deprived of the enjoyment thereof. The jury returned a verdict which found defendant guilty and assessed plaintiffs' damages at $4,000. Defendant's motion for a new trial was overruled and on April 29, 1941 judgment was entered on the verdict. Defendant appeals from said judgment. The death of plaintiff Peter A. Kugel during the pendency of this appeal having been suggested and plaintiff Margaret T. Kugel having filed her appearance as his widow and Oliver H. Kugel and Delores Kugel Unger having filed their appearance as the heirs at law of said Peter A. Kugel, it was stipulated that the cause proceed in this court as now entitled.

Plaintiffs' complaint, filed May. 26, 1939, alleged substantially that they owned certain real estate in the Village of Brookfield, Illinois, the greater portion of which was vacant, and that they resided on said property; that defendant, a municipal corporation, wrongfully caused a dump to be erected and maintained on portions of their premises and deposited on

such dump "all of the rubbish, waste materials, garbage and refuse collected from the various streets and alleys" of the Village of Brookfield; that defendant carelessly and negligently managed and operated such dump by causing to be thrown and kept thereon the aforesaid materials from which vile odors emanated and "scattered in the air"; that "for more than one year prior to the filing of this suit defendant wrongfully commenced the dumping of refuse towit: garbage, tin cans, and all refuse materials collected from the streets and alleys, which refuse was scattered in and about said premises of plaintiffs and the premises adjoining"; that said refuse and garbage "were allowed to decay and stand uncovered upon the aforesaid premises by reason of which a vile odor was scattered in and about the premises and in the immediate vicinity, and the aforesaid premises became infested with rats and other vermin"; and that by reason "of the wrongful acts of defendant in depositing and maintaining the aforesaid dump on plaintiffs' property, the premises of plaintiffs depreciated in value and became unfit for habitation, that plaintiffs became ill from the vile odors therein scattered and were deprived of the quiet and peaceful enjoyment of their property."

Defendant's answer, after denying all the material allegations of the complaint, averred that it did establish a dump on plaintiffs' premises and deposited thereon street dirt and certain waste materials with the oral consent and permission and upon the invitation of plaintiffs.

During the course of the trial plaintiffs filed a reply to defendant's answer, in which they admitted that they granted leave to defendant to deposit street dirt upon their premises and then alleged that such leave was revoked when defendant began to dump garbage and other waste materials and that "they never consented to the dumping of garbage, waste materials, refuse, tin cans and other materials on their property."

Plaintiffs' real estate in Brookfield, Illinois, which is involved herein, is 70 feet in width and 266 feet in depth. Its easterly 196 feet was originally from 8 to 12 feet below the level of the westerly 70 feet. The westerly 70 feet of the lot was improved with a five room bungalow, which fronts west on Forest avenue and was occupied by plaintiffs during the period covered by the dumping in question. A creek known as "Salt Creek" is 100 or 125 feet east of the easterly line of plaintiff's lot and the land between that line and the creek's bank is owned by the City of Chicago. During the spring season of 1934 and previous years said creek overflowed and flooded the low area on the rear of plaintiffs' lot and the two lots north of same, as well as the land owned by the City of Chicago, and when the overflow receded, water was left on portions of all of said low areas. The low portion of plaintiffs' lot extended almost to their garage, which then stood on stilts about 25 feet directly southeast of their bungalow.

In 1935 defendant began to fill in the low areas on the "Effinger" and the "Nevsimal" lots immediately north of plaintiffs' lot. It completed the filling of the Nevsimal lot in the spring of 1937, whereupon Mr. Nevsimal stopped the defendant's use of his private drive, which was then the only available entrance to the entire area being filled. After Nevsimal prohibited the further use of his drive, plaintiffs authorized defendant in the spring of 1937 to build a road across their lot so that it might have access to the rear of the Effinger lot and to the property of the City of Chicago and also authorized it to fill the easterly 196 feet of their lot to street level. According to Margaret T. Kugel it was then agreed that only street dirt should be dumped on the Kugel lot. Plaintiffs concede that the road constructed by defendant across their lot was built of street dirt. Although, in addition to street dirt, defendant admits that it deposited general rubbish or refuse, not including garbage, on

plaintiffs' premises since the inception of the dump thereon, they made no serious complaint as to the fill used on their lot during 1937 or until the summer or fall of 1938. When plaintiffs gave permission to defendant to build the road across their lot and to fill said lot, defendant was widening Prairie avenue, one of its streets, and, while the contractor was working thereon, he dumped 100 loads a day of street dirt and pieces of broken concrete on plaintiffs' premises. Some large pieces of concrete were placed on the easterly 100 feet of the lot and practically brought that portion thereof up to street level. During the period when the concrete was being delivered, no objection was made thereto and, while Mrs. Kugel testified that she complained about the large pieces of concrete after they had been deposited on the lot, her objection at the time did not appear to be so much to the use of the concrete as fill, but rather that the large pieces thereof "looked terrible" and should be "fixed up." When defendant's mayor had the large pieces of concrete "knocked down" with a bulldozer, plaintiffs were apparently satisfied in this respect. In the summer of 1938 plaintiffs constructed a new studio directly behind their bungalow for use in their business. It was about 25 by 35 feet in size and cost $700. After constructing the studio they moved their garage to a site about 45 feet east of and directly in line with their bungalow and it was approximately 155 feet from the east end of the garage to the east end of their lot. It is not claimed that any improper material was used to fill the area where the studio and garage now stand and, according to plaintiffs' son, those buildings stand on land filled in by defendant.

Other than the complaint heretofore referred to concerning the large pieces of concrete which were deposited upon their property, the record discloses that the only complaints ever made by plaintiffs to defend-

ant or to any of its officials or employees were as to the dumping of garbage on their premises.

Mrs. Kugel testified that she made no complaint concerning the dumping of garbage until the summer or fall of 1938; that from that time she continuously complained about the dumping of garbage on plaintiffs' lot until this suit was started on May 26, 1939; that defendant persisted with its garbage dumping, notwithstanding her repeated protests and complaints; that after defendant started to dump garbage on plaintiffs' premises "the flies were terrible, and then it started to burn and we got the smell of garbage burning and the smoke and rats—the rats used to gather up there in the morning and they would come out in my yard and I would see rats lying at my door"; that rats got into her home; that the odors that came from the garbage were "continuous, there was a continuous burning and sour garbage, it was just unbearable and you couldn't sit out in the yard, or have your windows open at night"; that the buildings on their premises "were only painted less than a year and they were all full of fly specks which we never had before, and smoke"; and that when they opened the windows of their studio, the "designs and things . . . just got terribly soiled."

The testimony of Mrs. Kugel concerning the dumping of garbage on plaintiffs' lot, her continuous complaints in regard thereto, the failure and refusal of defendant to cease dumping garbage, the vile odors that emanated from the exposed garbage, the garbage and rubbish fires and the obnoxious smoke that arose therefrom and spread over her premises and the presence of rats and flies in large numbers was corroborated by the testimony of other witnesses. There was also testimony that plaintiffs on one occasion stopped and turned away two loads of garbage. However, there is no evidence in the record and it is not claimed

that plaintiffs ever ordered defendant to stop filling their lot.

Defendant presented evidence that it never delivered or deposited garbage on plaintiffs' lot and that all of its garbage was delivered to a stone quarry in Cicero, Illinois, where it paid for the privilege of dumping same.

John J. Dreher, one of plaintiffs' principal witnesses, who was a former employee of defendant and in charge of its dump, testified that the low area on the Kugel property was practically filled on May 1, 1939, that the fill was covered with some black dirt during May 1939, and that at the time of the trial Kugel's entire lot was at street level "with the exception of one or two slight depressions."

Walter D. Wilson, a consulting engineer employed by defendant, testified that he had supervised the filling in of property as an engineer "innumerable times, probably 100 or 150 times"; that it was his opinion based on an examination shortly before the trial of the surface of the filled in portion of plaintiffs' lot that "the material that was used to fill was reasonable and substantial fill because of the fact that there are no depressions"; that if "any appreciable amount of garbage" had been used for fill "there would be a great likelihood that the surface of the land, the property at this time would be depressed in places"; that his estimate of "the amount of black dirt top dressing that was put on that property" was "450 cubic yards," averaging from one foot to one foot and one-half in depth; and that the material beneath the black dirt top dressing had settled.

At the outset it should be pointed out that the complaint does not seek relief by reason of a nuisance created or maintained by defendant on any property adjacent to plaintiffs'. Defendant asserts that in the trial court plaintiffs' counsel stated that "we claim a trespass" and therefore admitted that the theory of

plaintiffs' complaint was that defendant trespassed upon their property. Regardless of said statement of counsel, the trial of this case was conducted and the jury was instructed on the theory that the complaint charged defendant with creating and maintaining a nuisance on plaintiffs' property. In our opinion the trial court properly construed the allegations of the complaint as charging defendant with creating and maintaining a nuisance on plaintiffs' premises. The same rules of damages apply whether the action be in trespass or for a nuisance. (Sutherland on Damages, vol. 4, sec. 1036, p. 3845.)

Defendant contends that depreciation in the value of plaintiffs' property was not a proper measure of damages in this case and that the trial court erred in admitting evidence and instructing the jury in that regard.

Walter A. Huebsch, a real estate expert, testified on plaintiffs' behalf that in May 1939 the fair and reasonable market value of the Kugel property "without any dump or garbage" thereon was $7,500 and that "with the dump on the property" the reasonable market value thereof was $4,500, or in other words that the property had depreciated $3,000 in value because some garbage and other alleged obnoxious materials had been included in the fill. It will be recalled that the jury awarded plaintiffs $4,000 damages and it seems to be assumed in both plaintiffs' and defendant's brief that $3,000 of that amount was for depreciation in the value of the Kugel property and the other $1,000 for plaintiffs' inconvenience and loss of enjoyment of their property.

It must be conceded that the dump established on plaintiffs' property by defendant was a private work and it has been repeatedly held that where a private structure or other work on land is the cause of a nuisance or other tort involving real estate, the law does not regard the same as permanent and damages

therefor are recoverable only to the date of the commencement of the action. (*Schlitz Brewing Co. v. Compton,* 142 Ill. 511; *Bailey v. Heintz,* 71 Ill. App. 189; *Racine v. Catholic Bishop of Chicago,* 290 Ill. App. 284.) In the *Schlitz Brewing Co.* case it was held at p. 520:

"We think the correct rule upon this subject is stated as follows: 'If a private structure or other work on land is the cause of a nuisance or other tort to the plaintiff, the law cannot regard it as permanent, no matter with what intention it was built; and damages can therefore be recovered only to the date of the action.' "

In *Baker v. Leka,* 48 Ill. App. 353, in defining the test to be applied to determine the permanency of a structure the court said at pp. 358, 359:

"This is not to be determined from a consideration. alone of its enduring character, or that if not changed by the hand of man it would likely continue forever. To be permanent in a legal sense a structure must, in addition to being permanent or enduring within itself, be such that its continuation is lawful; *because if it is not lawful it is subject to be removed or abated by a legal proceeding and therefore cannot be deemed permanent. K. & S. R. R. Co. v. Hanan,* 131 Ill. 288.

" . . .

"A nuisance which may be abated by law is not regarded as a permanent source of injury but as a continuing nuisance. Successive actions may be maintained for it from time to time as such damages are inflicted. . . ." (Italics ours.)

In the instant case the complaint charges the defendant with wrongfully creating and maintaining a dump on plaintiffs' premises and with being guilty of wrongful conduct in dumping garbage thereon. Under the principles announced in the foregoing cases neither the creation and maintenance of the dump nor the depositing of garbage thereon can be regarded as a source of permanent injury.

In respect to the principles of law under consideration the following statement is found in plaintiffs' brief: "The cases cited in support of the foregoing proposition appear to lend support to the rule relied upon. However, the proposition relied upon is qualified by an exception to the effect that where the acts complained of are permanent in their nature the injured party has the option of treating the structures as a source of permanent injury and bring suit to recover both present and future damages, although the structure was unlawful and subject to abatement." In support of their position in this regard plaintiffs' cite *Catello v. Chicago B. & Q. R. Co.*, 298 Ill. 248; *Strange v. Cleveland, C., C. & St. L. R. Co.*, 245 Ill. 246; *Kankakee & S. R. Co. v. Horan*, 131 Ill. 288; *Chicago & E. I. R. Co. v. Loeb*, 118 Ill. 203; *Illinois Cent. R. Co. v. Grabill*, 50 Ill. 241; *Baker v. Leka*, 48 Ill. App. 353 and *Chicago Forge & Bolt Co. v. Sanche*, 35 Ill. App. 174. If by the foregoing statement counsel wish to be understood as contending that under the factual situation in the case at bar plaintiffs are entitled to recover damages both for depreciation in the value of their land and for loss of enjoyment thereof, there is no merit in such contention and it finds no support in any of the cases cited. It would serve no useful purpose to discuss said cases, inasmuch as it has always been the law of this State that damages for loss of enjoyment of property are not recoverable in cases where depreciation in the value thereof is the proper measure of the injury, since such loss of enjoyment is one of the elements to be considered in determining the extent of the permanent depreciation claimed and nothing may be allowed for loss of enjoyment independently and apart from the depreciation in the value of the land. (*Chicago Forge & Bolt Co. v. Sanche, supra.*) If by the aforesaid statement counsel is contending that plaintiffs are entitled to recover damages for permanent depreciation in the value of their property, the difficulty with their position in that regard is that the dump in question

was neither permanent in fact nor was it in its nature permanent so that it could be treated as permanent in law. There was nothing inherently enduring or permanent about the dump on plaintiff's property, even though some garbage was deposited thereon. Neither plaintiffs nor defendant contemplated that the dump would be permanent in fact or in its nature permanent. Under the oral agreement between the parties the depositing of fill on plaintiffs' property was to continue only until their lot was brought up to street level and at the time of the trial the dump was no longer in existence. Furthermore, the dump was a private structure or work.

Defendant next contends that ''when a nuisance may be removed at any time or abated at the instance of the party aggrieved thereby, depreciation in the market or selling value of the land is not the proper measure of the injury; and that it is prejudicial error to admit evidence thereof in such cases as a ground of recovery.'' In *N. K. Fairbank Co. v. Nicolai,* 167 Ill. 242, the defendant was charged with creating and maintaining a nuisance for two years prior to October 23, 1894 and the declaration asked damages as for depreciation in the value of plaintiff's property. Against the defendant's objection , a witness was permitted to state that the property was worth nothing for residence purposes on account of the nuisance. Another witness was asked to state the value of said property on October 23, 1892 and also on October 23, 1894—the beginning and end of the period covered by the suit—and, over defendant's objection, he testified that in 1892 it was worth $7,000 and in 1894 hardly $1,000. The jury returned a verdict assessing plaintiff's damages at $1,500 and in reversing the judgment entered thereon solely because of the admission of such evidence, the court there stated at pp. 246, 247 :

''. . . The depreciation in the market or selling value of the premises was not the measure of damages,

and *evidence of such depreciation could only tend to mislead the jury. As to nuisances which may be removed at any time or abated at the instance of the party aggrieved, that is not the proper measure of the injury.*
" . . .

"Conceding it was proper to show the character and value of the premises without the nuisance, to enable the jury to understand and estimate the amount necessary to compensate plaintiff for being deprived of the comfortable use and enjoyment of it as his home, *it was not proper to show permanent depreciation in market value as a ground of recovery.*" (Italics ours.)

The foregoing decision is conclusive that defendant's instant contention is a meritorious one. If defendant had dumped garbage or other obnoxious materials on plaintiffs' premises in violation of the agreement of the parties and the Kugels considered the dumping of such obnoxious materials as a nuisance, they could have had same abated at any time.

It has been shown that the structure or work involved herein was private rather than public, that the dump was neither permanent in fact nor in its nature permanent so that it could be treated as permanent in law, that it might well have been abated by plaintiffs at any time, and that it was alleged to be wrongful and unlawful rather than lawful. Therefore the alleged "nuisance and the resulting injury were of that class which the law denominates temporary, in contradistinction from permanent." (*Canteen Hunting & Fishing Ass'n v. Schwartz*, 128 Ill. App. 224.) In the *Schwartz* case in pointing out the character and measure of damages properly allowable for injuries resulting from a permanent as distinguished from a temporary nuisance the court said at pp. 226, 227:

"Appellees rely upon the rule laid down in *C. R. I. & P. R. R. Co. v. Carey*, 90 Ill. 514. That case as explained and made clear in *Schlitz Brewing Co. v.*

*Compton,* 142 Ill. 511 (516), holds no more than that where an injury is caused by a lawful public structure, properly constructed and permanent in character, it may be held to be a permanent injury. *In the case at bar, if we assume the existence of all the other requisites, the structure complained of was not a 'lawful public structure.' Appellant did not have the right to eminent domain, the dam was not constructed or maintained for any public purpose, or devoted to any use in the service of the general public.*

"*In cases of a permanent injury of real estate the measure of damages is the depreciation in value of the plaintiff's estate in the premises. . . . And in such case nothing can be allowed for damages to rental value, or damages to the right of use and occupation, or for anything pertaining to the realty, for these are all included in the depreciation in value of the premises. . . .*

"*In cases of temporary nuisance resulting in injury, the right to recovery is a continuing one. . . . but nothing can be allowed for depreciation of the market value of the premises.* This (the value) is not affected, for the continuing right to recover particular damages as they may accrue, 'runs with the land' and compensates for the injury so long as it may continue, the presumption being that an illegal act will not continue forever." (Italics ours.)

Was there any actual permanent depreciation in the value of plaintiffs' property? Originally they had a lot about three quarters of which was from 8 to 12 feet below street level. This low area, as already shown, was 196 feet in length and 70 feet in width and a large portion thereof was said to be at times a slough. Now they have their entire lot level with the street and the filled in portion thereof covered with black dirt to an average depth of one or one and one-half feet. At the time of the trial there was nothing in or upon the property that constituted a nuisance. In our opinion

the condition of plaintiffs' lot was improved rather than depreciated in value.

Defendant criticizes three of the four instructions given to the jury at plaintiffs' request. While some or all these instructions are properly subject to attack on one or more of the numerous grounds urged, we deem it unnecessary to discuss them, because they were predicated upon the erroneous theory as to damages upon which the case was tried. Upon the retrial of this case plaintiffs' proof as to damages must necessarily be restricted to their alleged loss of enjoyment of their property and it is fair to assume that the jury will be properly instructed as to the applicable measure of damages.

For the reasons stated herein the judgment of the circuit court of Cook county is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

FRIEND, P. J., and SCANLAN, J., concur.