(82 South. 582)

ILLINOIS CENT. R. CO. v. ELLIOTT.
(6 Div. 512.)

(Court of Appeals of Alabama.   July 21, 1919.)

1. RAILROADS ⬥114(1)—DAMAGE FROM WATER TANK—OVERFLOW OF LAND—PLEADING.

In action against a railroad for damage to land by overflow from water tank, plaintiff must allege facts showing that damages suffered were the result of the breach of duty owed by the railroad to plaintiff.

2. MASTER AND SERVANT ⬥329—INJURIES TO THIRD PERSON BY NEGLIGENCE OF SERVANT —PLEADING.

Where damages suffered are alleged to be on account of negligent act of a servant or agent of defendant, the complaint must allege that the act was done by the servant or agent while acting in the line and scope of his authority.

3. DAMAGES ⬥62(1)—DUTY OF INJURED PARTY—MITIGATION OF DAMAGES.

A party must use ordinary or reasonable care and diligence to minimize his damages.

4. DAMAGES ⬥111—INJURY TO LAND—OVERFLOW FROM WATER TANK.

The measure of damages for causing a house to fall by permitting water from a tank to run upon the land is the difference between the value of the property immediately prior to and immediately after the injury, and not the cost of repairing house after injury, or the expenses which would have been necessary to prevent the injury, though owner had knowledge of overflow.

5. RAILROADS ⬥113(10) — OVERFLOW FROM WATER TANK—STORM.

Where overflow from railroad water tank softened ground under house on adjoining land, railroad is liable for damages upon falling of house, even though it would not have fallen but for a storm or high wind.

Appeal from Circuit Court, Winston County; T. L. Sowell, Judge.

Action by Mrs. Ada Elliott against the Illinois Central Railroad Company for damages for injury to land by overflow. Judg-

ment for plaintiff, and defendant appeals. Reversed and remanded.

The following charges were refused to the defendant:

"(1) The court charges the jury that, even if they should find from the evidence that the plaintiff's storehouse was injured and caused to fall by water flowing from the defendant's tank under or against said storehouse, the amount of damages that the plaintiff would be entitled to recover could not exceed the difference in the value of plaintiff's storehouse and goods just before it fell and just after it fell."

"(5) If the jury find from the evidence that the plaintiff had knowledge that water from the tank would probably cause the injuries complained of, that such injuries could have been prevented by the plaintiff digging a small ditch around the southeast corner of plaintiff's lot, and that plaintiff had such knowledge in time to have caused such ditch to have been dug and prevented the injury by the use of reasonable care, skill, and diligence, adapted to the occasion, then the jury cannot find for the plaintiff for more than the reasonable costs or that would have been necessary to have prevented such injury.

"(6) The court charges the jury that in this case they cannot find a verdict for the plaintiff for more than the reasonable cost of preventing the injury, if the jury find from the evidence that the plaintiff had notice or knowledge that such injury would probably result from the water overflowing the tank in time to have prevented same by reasonable effort or expense.

"(7) The court charges the jury that in this case they cannot find a verdict for the plaintiff for more than it would have reasonably cost the plaintiff to have prevented the storehouse from injury by defendant's tank, if such injuries could have been reasonably prevented by the plaintiff after such knowledge of such probable injury.

"(8) The court charges the jury that if the plaintiff had knowledge that water was coming from the tank upon her property and would probably cause the injuries complained, that by the use of reasonable care the plaintiff could have prevented the injury, and that such knowledge came to the plaintiff long enough before the house fell the first time for the plaintiff by the use of reasonable care to have prevented the injuries, then the jury should not return a verdict in favor of the plaintiff for more than the reasonable expenses or costs necessary for the plaintiff to have prevented such injury.

"(9) The court charges the jury that the evidence shows that Arthur Elliott, husband of the plaintiff, was plaintiff's agent as to the property involved in this suit, and that notice or knowledge upon the part of Arthur Elliott as to water flowing from the tank to or upon the plaintiff's lot or under the house was in law notice or knowledge to or upon the part of the plaintiff.

"(10) The court charges the jury that if they find from the evidence in this case that the plaintiff, at and prior to the time her property was injured by water from defendant's tank, had knowledge or notice of such injury and could have prevented the same by digging or having dug a ditch around or in front of part of the property, then the jury could not find a verdict for the plaintiff for more than it would have cost the plaintiff to have dug such ditch.

"(11) The court charges the jury that, if they are reasonably satisfied from the evidence that but for a storm the house would not have fallen either time, they should return a verdict for the defendant, even if they should be satisfied from the evidence that the defendant's tank overflowed and ran a large amount of water under plaintiff's house.

"(12) The court charges the jury that, if they find from the evidence that a storm or high wind was the proximate or principal cause of the injury complained of, then the jury should find for the defendant, although they should believe from the evidence that water from defendant's tank run under or so near plaintiff's storehouse as to make the ground soft and wet.

"(13) The court charges the jury that they should return a verdict for the defendant, even if they should be reasonably satisfied from the evidence that water from defendant's tank softened or made wet the ground on which the storehouse stood, if the evidence further shows that but for a storm or high wind the house would not have fallen.

"(14) If the jury believe from the evidence that there was more than one cause of the injury, and the evidence does not reasonably satisfy the jury as to which of such causes was the proximate cause of such injury, then the jury will return a verdict for the defendant, although one of such causes was water flowing from defendant's tank."

The suit was commenced August 1, 1916. The first count of the complaint, the only one on which the case went to the jury, count 2 having been withdrawn, reads:

"Count 1.

"The plaintiff, Mrs. Ada Elliott, claims of the defendant, the Illinois Central Railroad Company, a corporation, the sum of $2,000, as damages, for that the plaintiff is the owner of the following described lands situated in Winston county, Ala., to wit: Beginning at a point 50 feet south of the southeast corner of lot No. 8 in the Howell addition to the town of Haleyville, Ala., thence run westward 150 feet, thence south 50 feet, thence east 150 feet, thence north 50 feet, to place of beginning, being a part of the northwest quarter of southwest quarter of section 6, township 10, range 10 west.

"That plaintiff has a house erected thereon. That she is using the same for a storehouse in which is kept goods, wares, merchandise, scales, and other articles of value, and the said house has been so used for a long time. That said lot is situated near Haleyville, in Winston county, Ala.

"Plaintiff alleges that defendant owns and operates a railroad yard in Haleyville, Winston county, Ala., which is in close proximity to the lands hereinbefore described; that on the right of way of said railroad yard, and very close to plaintiff's said land, is located a water tank, which is owned and operated by the defendant; that defendant, its agents or servants, does now and has for the past year permitted water from the said tank to overflow and run upon said lands of plaintiff, and to flow directly under her said storehouse, causing the ground under said storehouse and around the pillars thereof

to become wet and soft, thereby causing said pillars to give way and permitting said house to fall down, and break up the said goods, wares, merchandise, scales, and other articles of value in said house, and causing plaintiff to be out of the use of said house for a long time, and causing said house to greatly depreciate in value because of being greatly damaged and disfigured by said fall, and plaintiff was put to great expense and inconvenience in getting said house erected and put back in place.

"And plaintiff alleges that the said lot is greatly damaged by said water flowing upon it, which has been so flowing for the past year, thereby causing it to greatly decrease in value, so that plaintiff is deprived of the ordinary use for which her aforesaid lands were situated.

"Plaintiff avers that she suffered the aforesaid injuries and damages, by reason of and as a proximate consequence of the defendant, its agents or servants, permitting the water from said tank to overflow and run upon the lands of the plaintiff as aforesaid, and that she suffered the damages as aforesaid."

The defendant demurred to this count of the complaint and also to the second count, assigning, among other grounds, the following:

"(2) It does not appear therefrom that the injuries complained of are the proximate result of the violation of any duty or act of negligence by the defendant or of its servants, or agents, while acting within the scope or course of their employment.

"(3) It does not appear therefrom that the damages complained of are the proximate result of the violation of any duty owing by the plaintiff to the defendant.

"(4) It does not appear therefrom that the damages complained of are the proximate result of any negligence of the defendant, its agents or servants."

"(14) It does not allege that the acts complained of were done by the agents or servants of the defendant while acting within the scope or course of their employment."

"(17) For that there is joined in the same count several or more than one distinct causes of action.

"(18) For that each count joins therein several distinct causes of action."

The court overruled the defendant's demurrer to the complaint, and thereupon the parties in open court, and in writing, filed on September 25, 1917, pleas in short, by consent, as follows:

"Comes the Illinois Central Railroad Company, a corporation, defendant in the above-entitled cause, and for answer to the complaint therein, and each count thereof separately and severally, and by agreement with the plaintiff, pleads in short by consent, the general issue, and not guilty, with leave to give in evidence all testimony and matters that would be a defense to said complaint, or any count thereof if specially pleaded.

"W. C. Davis, Attorney for Defendant."

"The foregoing is hereby consented to and special pleadings waived, the defendant having consented that the plaintiff may introduce in evidence any matter that would be admissible under proper replications.

"Travis Williams,
"J. A. Stagner,
"W. V. Mayhall,
"Attorneys for Plaintiff."

The testimony introduced by the plaintiff tended to show that the defendant's tank, which was located on higher ground and across a dirt road from plaintiff's property, overflowed frequently and in considerable quantities for a period of several months prior to the time of the injury; that the water from said tank, on account of such overflow and because of the culvert, or ditch, along the road in front of the tank being closed, passed over onto the east side or the southeast corner of the plaintiff's lot and then onto the western part of the lot where the storehouse was located, and caused the ground under the storehouse to become soft, and resulted in the storehouse on two occasions, when it was raining and the wind blowing, falling and injuring the building and contents, namely, a stock of goods, and damaging the plaintiff to the extent of several hundred dollars.

The testimony in behalf of the defendant, being that elicited from the plaintiff's witnesses and also from the witnesses introduced by the defendant, showed that the ground on which the storehouse was built was low and damp, the pillars were insufficient, that only a small amount of water passed from the defendant's tank on plaintiff's lot, and that very little, if any, reached that part of the lot on which the building was located; that a large amount of surface water, unaided and unaffected by the tank, passed under the building; that, on each of the two occasions when the building fell, a severe windstorm was waging, which resulted in blowing down other buildings in the neighborhood; and that in the opinion of a number of the witnesses the fall and injury to the plaintiff's building was due to the high wind, the natural condition of the ground, and the insufficient pillars on which the building rested, and not to water that flowed from the defendant's tank. The testimony tended to show that, for a considerable time before any injury was done to the plaintiff's property, she was aware of the fact that the defendant's tank was occasionally overflowing, and that water therefrom was passing onto a part of her lot and would result in injury thereto unless it was diverted. The testimony further tended to show that near or along the south boundary of her lot, commencing at the point where the water from defendant's tank first touched her property, there was a natural ravine, which, if kept open, would carry the water from the tank and prevent injury to plaintiff's property. The defendant offered to prove that the plaintiff, after she became

aware that there was danger to her property being injured by the tank overflowing, but before the injury occurred, could, by expending a nominal sum in cutting a small ditch at the southeast corner of her property, have prevented any injury to her storehouse or goods on account of water escaping from defendant's tank. The court refused to permit defendant to prove that the plaintiff and her husband, after becoming aware of the danger to her property being injured by the water flowing from the tank, not only refused and failed to take any steps to minimize the damages, but agreed that they would do nothing to prevent injury to the property, would let the water run where it wanted to, and, if injury resulted, get even with the Illinois Central Railroad Company for not permitting the plaintiff's husband to keep a job.

Davis, Pennington & Wiggins, of Jasper, for appellant.

Travis Williams, of Russellville, and J. A. Stagner and W. V. Mayhall, both of Haleyville, for appellee.

BRICKEN, J. There are thirty-three assignments of error made to the action of the court in overruling demurrers to the complaint, in rulings on the admission of testimony, and the giving and refusal of special charges in writing, and to portions of the oral charge of the court.

We do not deem it necessary to pass separately upon each assignment of error; but, as the case will have to be reversed and remanded, we will lay down the rules of law applicable to such cases, which will be a sufficient guide to the lower court upon another trial.

[1] The plaintiff must allege facts in his complaint which show that the damages suffered were the result of a breach of duty owed by the defendant to the plaintiff. B. R. L. & P. Co. v. Nicholas, 181 Ala. 491, 61 South. 361; Higdon v. Fields, 3 Ala. App. 322, 57 South. 58; T. C. I. & R. Co. v. Smith, 171 Ala. 251, 55 South. 170.

[2] Where the damages suffered are alleged to be on account of a negligent act of a servant or agent of the defendant, the complaint must allege that the act resulting in the damage was done by the servant or agent, while acting in the line and scope of his authority. Going v. Southern Ry. Co., 192 Ala. 665, 69 South. 73; Southern Ry. Co. v. Guyton, 122 Ala. 240, 25 South. 34; Goodloe v. M. & C. R. R. Co., 107 Ala. 233, 18 South. 166, 29 L. R. A. 729, 54 Am. St. Rep. 67.

Both of these defects in the complaint were raised by the demurrers interposed to the complaint. We are of the opinion that the averments of the complaint fail to show any breach of duty owed by the defendant to the plaintiff. It is not alleged in the complaint that the negligent act of the servant or agent of the defendant was done by him while acting in the line or scope of his authority. It follows therefore that the court erred in overruling the demurrers to the complaint.

[3] A party must use ordinary or reasonable care and diligence to minimize his damages. Worthington v. Cleveland Lumber Co., 80 South. 688;[1] S. S. S. & I. Co. v. Mitchell, 161 Ala. 278, 49 South. 851; King Land & Improvement Co. v. Bowen, 7 Ala. App. 462, 61 South. 22.

The lower court was in error in refusing to allow defendant to show that by use of ordinary care and reasonable diligence the plaintiff could have miniiized the damage to her property. Authorities supra.

[4] The measure of damages to the real property is the difference between the value of the property immediately prior to, and immediately after, the injury. S. S. S. & I. Co. v. Mitchell, supra; Jackson v. Bohlin, 75 South. 697.[2] The oral charge of the court, excepted to, "The measure of damages, if you find for the plaintiff in this case, would be the difference between the value of the house and lot just prior, and the value of it just after, the injury, and whatever the injury was to the goods, wares, merchandise, and property contained in the house, and whatever the proof shows it cost to repair the house after the injury" was erroneous. Had the last clause, "and whatever the proof shows it cost to repair the house after the injury," been omitted, the charge would have been free from error. However, the plaintiff would not be entitled to recover both the difference in value of the property and also the cost necessary to repair the same.

Charge 1 requested by defendant was properly refused.

Charges 2 and 3, requested by the appellant, were the affirmative charges and were properly refused.

Charges numbered 5, 6, 7, 8, and 10, requested by the appellant, were properly refused. They were faulty in that they limited the plaintiff, under the conditions set forth in the charges, to a recovery of costs necessary to have prevented the injury, instead of the damages that were caused in spite of the exercise of reasonable and convenient care and diligence to prevent further injury. Arndt v. City of Cullman, 132 Ala. 540, 31 South. 478, 90 Am. St. Rep. 922.

[5] There was no error in the refusal of charges 9, 11, 12, 13, and 14, requested by defendant.

For the errors pointed out, the judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.

[1] 16 Ala. App. 614.    [2] 16 Ala. App. 105.