(126 So. 64)

No. 29069.

ELLIS v. NEW ORLEANS GREAT NORTH-
ERN R. CO.

Jan. 6, 1930.

· Benj. M. Miller, of Covington, and Delos R. Johnson, of Franklinton, for appellant.

P. M. Milner, of New Orleans, and R. D. Jones, of Franklinton, for appellee.

ROGERS, J. The plaintiff, Harvey E. Ellis, owns an extensive country estate, on which he makes his home, situated about a quarter of a mile north of the town of Covington. The right of way of the defendant railroad company adjoins the estate on the north and east. During the summer and fall of the year 1924 plaintiff's property was visited by four fires, which he claims were caused by sparks from locomotives of the defendant company. The first and fourth fires occasioned little or no damage, but the. second and third fires swept over a large acreage and caused considerable loss. These fires occurred on August 25, 1924, and October 22, 1924.

Plaintiff instituted this suit to recover $42,-582.51 as damages to his property, alleged to have been caused by the second and third fires. He averred that the fires were set by sparks emitted by a locomotive of the defendant railroad company; that the company had admitted its responsibility for the fires and for the damage occasioned thereby, but has not admitted the amount of such damage, and the suit is necessary to determine the amount of his loss.

The defendant company filed an exception of no cause or right of action, which was overruled. The company then answered, denying that it had admitted its responsibility for the fires or for the loss suffered by plaintiff, averring that its locomotives were properly equipped with spark arresters; that during the summer and fall of the year 1924, in the section of Louisiana through which its railroad runs, and throughout the South generally, there was an unprecedented drought; that fires were of constant occurrence, not only along the tracks of railroad companies, but also in sections remote from railroads; that during the drought thousands of trees, as well as seedlings died; that defendant was careful in keeping its right of way clear of combustible material, and operated its trains with every precaution to prevent fires starting on its right of way or on the lands adjacent thereto; that plaintiff, on the contrary, was negligent in failing to protect his property against fires, by permitting undergrowth and inflammable material to accumulate, and by neglecting to establish or permit to be established a fire guard on that portion of the property which was adjacent to defendant's right of way; that plaintiff himself was negligent in the premises; and the defendant company expressly set up plaintiff's contributory negligence in bar of his action.

The case was tried by the judge of the district court, without the intervention of a jury, and resulted in a judgment for plaintiff for $15,508.82, with legal interest from judicial

demand. From this judgment, the defendant company has appealed.

The defendant company insists upon the merit of its exception of no right or cause of action. Its contention on this branch of its defense is that the so-called allegations of negligence in plaintiff's petition do not contain statements of fact, but only the pleader's conclusions of law.

While the plaintiff might have gone into more detail concerning his charges of negligence on the part of the defendant company, we think that, on the whole, his petition discloses a cause of action. The petition alleges that the defendant company set fire to plaintiff's property by sparks from its locomotive, which was negligently equipped and operated on an insufficient right of way. Coupled with these allegations is the further allegation that the defendant company had admitted its responsibility for the fires and the consequent damage.

On the merits, the questions to be determined are whether the defendant company is responsible for the fires, and, if so, the amount of plaintiff's loss for which it should make reparation.

We have had no difficulty in reaching the conclusion, on the primary question, that the fires on plaintiff's property were caused by the emission of sparks from one of the defendant company's locomotives.

The evidence offered on the part of defendant to show that its locomotive was properly equipped with a spark arrester, and therefore could not have emitted sparks of a sufficient size to cause the fires, loses its force in view of other evidence in the record showing that there were no fires in the vicinity of plaintiff's premises prior to the passage of defendant's trains, and that there was no other apparent cause for the fires. The fire of August 25, 1924, occurred at about 2:30 o'clock in the afternoon, and the fire of October 25, 1924 occurred at about 7 o'clock in the evening. Both fires broke out immediately near the fence separating plaintiff's property from the defendant's right of way, immediately after the passage of defendant's trains. The right of way was filled with dry grass, weeds, and débris. It was only 40 feet wide, and the railroad track was only 20 feet from plaintiff's property. At the time the fires occurred strong winds were blowing across defendant's right of way and railroad track towards the premises of plaintiff. The August fire burned about 50 acres, and the October fire burned about 400 acres, of plaintiff's tract of land adjacent to defendant's property.

In point of fact, so far as the fire of August 25, 1924, is concerned, the defendant company, through its authorized agents, has expressly admitted, in writing, its responsibility therefor. So far as the fire of October 22, 1924, is concerned, the written admission of liability is inferential, rather than express.

But there is no room for doubt that the October fire was also caused by sparks emitted from one of defendant's locomotives. The fire was seen by several parties at a spot near the fence separating the properties of plaintiff and defendant immediately after two trains had passed. One of the trains was the local freight going south, and the other was a passenger train going north. One of the witnesses who saw the fire testified that the locomotive of the local freight train was pulling hard, puffing and blowing, in order to reach the switch before the passenger train, which went by a few minutes after. The fire apparently started on the railroad right of way, where two ties were burned, one totally and the other partially. The season was unusually dry, and the fire was evidently started by sparks from one of the passing locomotives, probably

the one drawing the local freight train, falling upon the dry grass, weeds, and débris which the defendant company had negligently permitted to accumulate upon its right of way. After the undergrowth and obstructions on the right of way became ignited, the fire was driven by a heavy wind across plaintiff's fence, the posts of which for a distance of about a mile and a half were consumed, and onto plaintiff's property.

 The defendant contends that as a precautionary measure the plaintiff should have plowed a fire guard, or permitted the defendant to do so, on his property adjacent to the railroad right of way. Some testimony was offered to show that, subsequent to the August fire and prior to the October fire, the defendant offered to plow such a fire guard across plaintiff's land, but that plaintiff refused to permit this to be done. We do not attach any importance to this contention as a ground of defense, because it is plain, from all the testimony on the point, that the suggestion was made merely in a general conversation between plaintiff and the representatives of the defendant company. Certainly the suggestion was not renewed in the subsequent correspondence between the parties; and, in any event, no duty whatever rested upon plaintiff to plow a fire guard on his property, or to permit the defendant to do so.

It is not contributory negligence for the owner of land of a boggy nature, filled with roots and other combustibles, requiring unusual precautions to prevent fire from spreading over it, to fail to cut a strip of land immediately adjoining a railroad right of way; it not being the duty of the landowner to take unusual precautionary measures to protect his property from injury by the railroad company, which operates such dangerous agencies as locomotive engines near his premises, the

duty resting on the latter to adopt the necessary cautionary measure. C. & E. R. Co. v. Smith, 6 Ind. App. 262, 33 N. E. 241.

The secondary question of the measure of plaintiff's damages is not so easily determined.

Plaintiff claims as damages caused by the August fire, the sum of $1,605.75, which are itemized as follows, viz.: Hardwood and pine timber killed, $1,105.75; timber not killed, but damaged to an extent impairing its growth and weakening its vitality, rendering it more susceptible to the ravages of insects and windstorms, $500.

Plaintiff claims as damages resulting from the October fire the sum of $17,043.96, which are itemized as follows, viz.: Hardwood and pine timber killed, $13,043.90; timber not killed, but damaged to an extent impairing its growth and weakening its vitality, rendering it more susceptible to the ravages of insects and windstorms, $4,000.

In addition to the foregoing items of damages, plaintiff claims, as a consequence of both fires, $5,000 for the impairment of the beauty and salability of his property, $5,000 for loss of trees which, when grown, would have constituted a windbrake, $5,000 for loss of the future protection the trees, when full grown, would afford his home and family, $1,000 for the loss of moisture beneficial to his agricultural operations, which would be stored in the trees, if they had not been destroyed, $128 for cordwood burned, $155 for bridges and bridge timber destroyed, $84 for the loss of square timber, $315.80 for damage to his wire fencing, $5,000 for injury to his game preserve, and $2,250 for loss of humus on the land and fertility of the soil by fire spreading over it.

The trial judge found that there was nothing in the record to show the number of feet

of large timber suitable for commercial purposes destroyed or damaged, and that the majority of the trees killed or injured were of a size too small for mill or commercial purposes; therefore, that it was impossible to take into consideration the commercial value of the trees in fixing the measure of damage to plaintiff. He also found that it was impossible to determine the replacement value of the trees. The judge finally based his award of damages for the loss and injury to the trees on "the expense of artificially planting and cultivating such small growth to the point of development at the time the fire occurred," under section 5 of Act 90 of 1922. He accordingly awarded damages in the sum of $802.87 for the trees killed and damaged in the August fire, and for the sum of $8,521.95 for the trees killed and damaged in the October fire. He allowed plaintiff, in addition, $2,500 for the impairment of the beauty and value of his property, $2,000 for the damage to his game preserve, and $1,000 for the destruction of the humus on the land and the fertility of the soil. The judge also included in the judgment $128 for cordwood, $239 for bridges and lumber, and $315 for wire fencing burned by the fires. The total amount of the judgment, as hereinbefore stated, was $15,508.82.

Plaintiff's claim for damages for the destruction of cordwood, lumber, bridges, and wire fencing, amounting in the aggregate to $682, was properly allowed by the court below.

The award by the trial judge of $2,500 as damages for the impairment of the beauty of plaintiff's property and of $2,000 as damages to plaintiff's game preserve cannot be sustained. To allow these items for the diminished value of plaintiff's property, and at the same time award him the cost of restoring his property to its former condition, would manifestly permit him to recover double damages.

Plaintiff contends that he was damaged to the extent of the expense of artificially planting and cultivating the tree growth that was destroyed to the point of development at the time the fires occurred. He invoked the provisions of Act No. 90 of 1922, § 5, in support of his contention, which, as heretofore stated, was upheld by the trial judge, who assessed plaintiff's damages accordingly. The statutory provision reads as follows, viz.:

"That nothing in this act shall be construed as affecting the right to damages. The liability of persons or corporations for all damages shall include the injury to young tree growth resulting from fires. The damage to such young growth shall be calculated as the expense of artificially planting and cultivating such small growth to the point of development as the time when the fire occurred."

Plaintiff's land is ordinary cut-over pine land, which was denuded of its virgin timber only a few years ago. At the time of the fires there were some saplings on the land, and an extensive tree growth, which had been established by plaintiff during the past few years. There was testimony submitted on behalf of plaintiff to the effect that the cost of reproducing the tree growth destroyed would be 5½ cents per seedling. The court below allowed plaintiff a recovery on the basis of 5 cents per seedling. On behalf of the defendant there is testimony showing that the expense of reproducing the tree growth destroyed would be four-tenths of a cent. But this estimate does not include certain small items of expense.

Plaintiff's witness, in submitting his estimate, has included numerous items, such as

cost of the seedlings, expense of draying, labor, interest, cost of protection, taxes on land on an assessed value of $30 per acre, although the land previous to the fires was assessed for only $5.75 per acre, all of which we think is too fanciful for us to entirely rely on in estimating the amount of plaintiff's loss.

■■ From our appreciation of all the evidence in the case, we have reached the conclusion that an estimate of 2 cents per tree, with an allowance of $500 for the injury to the soil, would be a liberal award for plaintiff's loss in those respects; that is to say, for the restoration of trees killed and damaged $3,729.92, and damage to soil $500, or a total of $4,229.92, to which must be added $628 for the destruction of cordwood, bridges, and fencing, as hereinabove set forth, or a grand total of $4,857.92, as the amount of plaintiff's loss. This figure is in line with our decision in Smith v. Y. & M. V. R. R. Co., 160 La. 998, 107 So. 779, where we reduced a verdict of $4,000 to $925 on a claim of $9,-500 for damages by fire to denuded pine lands, on which there had grown a large number of pine saplings, interspersed with some hardwood. The amount is also in line with the figure of $3,100 set by plaintiff himself as the amount of his damages in a discussion thereof held with the representatives of the company on November 3, 1924; a memorandum of the items of damage as given by plaintiff being then taken down in writing by E. R. Cassidy, claim agent of the defendant company. The memorandum and testimony concerning the admission of plaintiff as to the amount of his damages were, on the objection of plaintiff, ruled out on the ground that they were made in an effort to effect a compromise. We think the evidence should

have been admitted. It is true that on October 23, 1924, the day after the third fire had occurred, plaintiff wrote the defendant, calling its attention thereto, with the declaration that, unless the matter was adjusted within five days, he proposed to sue for damages in the sum of $25,000. But it is not pretended that at that time plaintiff had fixed his loss at the amount mentioned in the letter, and, as a matter of fact, he actually brought this suit to recover $42,582.51.

■ The testimony on the point shows that plaintiff's statement of his loss was made before any settlement by compromise was discussed. Whatever was said in the discussion relative to the compromise was inadmissible, but the objection could not apply to the prior statement of the damages furnished by plaintiff to the defendant. However, we do not think it is necessary to remand the case for the admission of the rejected evidence, since the fact itself is not disputed by plaintiff. Nor do we think that the statement is wholly binding on plaintiff, since between the time it was made and the time of instituting the suit it might well have happened that he ascertained his loss was somewhat larger than he had at first estimated; nevertheless, we think it has some bearing on the question of damages, as tending to show that the amount sued for and the amount allowed by the court below are wholly out of proportion to the loss actually suffered by plaintiff.

For the reasons assigned, the judgment appealed from is amended, by reducing the principal sum thereof from $15,508.82 to $4,857.-92, and, as thus amended, the said judgment is affirmed; plaintiff and appellee to pay the costs of the appeal.