TATE, Judge.
The plaintiff sues for crop damage caused by fire. He alleges that the defendant railroad permitted a fire on its right of way to get out of control and to spread upon his neighboring field. The trial court awarded him damages of $1440 for the destruction of a 16-acre stand of *687 growing lespedeza clover. The defendant appeals.
The principal issue on this appeal is whether the trial court arrived at the correct measure of damages.
1.
The defendant does contend that its employees were not negligent in letting the fire spread. This contention has little merit.
The railroad foreman started a fire in a high wind, knowing that the grass on his right of way and the hay in the neighboring field was extremely dry. He lit the fire without any means of extinguishing or controlling the fire if the high wind shifted. The wind did so immediately, causing the fire to jump into the next field and burn the last year’s dried hay and the new year’s growing lespedeza crop in this field:
The general rule is that one who intentionally starts a fire on his premises is liable for damage therefrom resulting to neighboring land, if he is negligent either in starting the fire or in guarding against its spread. Ellis v. New Orleans Great Northern R. Co., 169 La. 797, 126 So. 64; Hauch v. Hernandez, 41 La.Ann. 992, 6 So. 783; Hardware Dealers Mutual Fire Insurance Co. v. Willis, La.App.3d Cir., 179 So.2d 441; Rosebery v. L. O. Brayton & Co., La.App.2d Cir., 4 So.2d 777. These decisions also hold that the neighbor is not contributorily negligent for failing to take precautionary measures to protect his own property, for, he has a right to rely upon the one who stárts the fire to keep a watchful eye over it and to adopt sufficient means for its control or suppression.
2.
The trial court found that the destroyed acreage would have produced 120 bales of lespedeza hay per acre, based on the preceding’s years production. It awarded the landowner 75‡ per bale, the lowest market value estimated. Since sixteen acres were destroyed, the court awarded the plaintiff $1440 (1920 bales @ 75‡ per bale).
The appellant attacks this award on many counts and in several alternatives. Of these, we deem the substantial contentions to be: (a) that the plaintiff’s recovery should be reduced or denied because he failed to minimize his damages by re-planting or fertilizing a new crop; (b) that the trial court incorrectly measured damages by the loss of a lespedeza hay crop, whereas damages should have been measured by the loss of grazing value, since the plaintiff had leased the burned field for a pasture, not to raise a hay crop.[1]
(a)
As to minimizing damages, the preponderant evidence proves that, to raise a new lespedeza crop, the plaintiff had to disc, fertilize, reseed, and cultipack the land, at a cost of about $24 per acre (or $388 for the 16-acre tract), to avoid the loss of a $1440 lespedeza crop (and the defendant contends it worth much less). If pasturage instead of hay-crop is to measure the award (see below), then the plaintiff had to spend $200 fertilizing the ground so as to enrich with maximum protein-value the natural Bermuda grass in order to get as maximum benefit $600 pasturage. In either event, the new growth, commencing later than the burned- *688 off first crop, was subject to the ordinary-vicissitudes of non-germinating or blighted growth because of unfavorable weather conditions at critical periods in their growth.
 While an injured person must use reasonable diligence and ordinary care under the circumstances to minimize his damages, nevertheless the courts do not ordinarily apply this principle to restrict an injured person’s recovery when expenditures of his own funds are needed to avoid the consequences of the tort; they do so only when “(1) [these expenditures] are small in comparison to the possible losses and (2) it is virtually certain that the risks incurred will avoid at least a part of the loss.” Unverzagt v. Young Builders, Inc., La., 215 So.2d 823, 826 (rendered November 12, 1968.)
The evidence shows that, as measured by the loss sustained, unreasonably large expenditures would be required to recultivate the field on the possibility that the losses might thereby be minimized. We do not think the plaintiff should be penalized for not using his own funds in the hope that the tort-caused loss might be minimized if he were successful, but that reimbursement of these additional expenditures would not be resisted by the tortfeas- or should the new crop fail also.
(b)
In awarding the plaintiff the value of the lespedeza crop, the trial court reasoned that, due to its loss for grazing, the plaintiff had been forced to use his own stored hay to feed his cattle. There is considerable force to this reasoning.
On the other hand, the plaintiff himself made no attempt to calculate how much of his hay that he used was due to shortages caused by loss of the 16-acre field in question rather than the usual shortage of growing forage in spring. Again, there are strong indications that the 120-bale per acre growth of the previous year on the 16-acre tract was truly exceptional for it and for the locality, and that the new year’s re-seeded growth could not have exceeded 75-80 bales per acre. Also, from any net market value awarded should probably be deducted, at least, the cost of fertilizing at $5-6 per acre ($80-96), and the cost of clipping to reduce weed-growth at $2.50 per acre ($40) ; for these further expenditures were at the time of the fire to be necessitated to produce a full lespedeza crop.
The plaintiff himself repeatedly testified, nevertheless, that he did not intend to grow a lespedeza hay crop on the field. He had leased it for pasturage for his cattle (partly because of the good stand of lespe-deza to be expected, however). The plaintiff intended to graze a herd of 60-70 cattle over approximately 200 acres, including the leased field.
The unanimous expert and farmer testimony is that, under such circumstances, by grazing he could not expect the high yield of a cultivated hay crop, nor any residual hay left for harvesting; especially since the stand was of “Kobe” lespedeza, more suitable for a cultivated hay crop, rather than of the “common” lespedeza, excellent for grazing.
We therefore find the more appropriate measure of damages to be that testified to by the defendant’s experts, namely the loss of beef or calf poundage through loss of the 16 acres for grazing purposes. While one of the defendant’s experts testified to a lesser value upon the assumption of a poor pre-fire lespedeza stand (not borne out by the record, see Footnote 1), the other estimated the loss to be of about 150 pounds of beef per acre at 25‡ per pound, or $37.50' per acre.
For the loss of the grazing on the 16 burned acres of a good lespedeza stand, then, the total damages at $37.50 per acre amount to $600.

Decree

We therefore reduce the award from Fourteen Hundred Forty ($1440) Dollars *689 to Six Hundred and no/00 ($600.00) Dollars, plus legal interest thereon from judicial demand until paid. The defendant-appellant is cast with all costs of these proceedings and of this appeal. As thus amended, the trial court judgment is affirmed.
Amended and affirmed.

. Most of the appellant’s contentions and alternatives are founded on the contention that the railroad did the plaintiff a favor by burning his field, since the growth at the time was supposedly 65% weeds, 20% native bermuda grass, and only 15% lespedeza clover. These hy-pothets are founded upon the identification of typical pre-fire growth by a claim agent (a railroad employee) and by a hired expert. The predominance of the testimony shows that these “samples” were taken from a low spot unburned because of standing water and from a plowed-up fire-break around the perimeter of the field, which after the fire had been grazed and denuded of the little clover on it. Like the trial court, we find these contentions unimpressive.