Lester Lee BRISCOE and Myrtle J. Briscoe, Appellees,

v.

HARPER OIL COMPANY, a corporation, Appellant.

No. 57780.

Supreme Court of Oklahoma.

May 28, 1985.

Rehearing Denied July 25, 1985.

23. 109 Mich.App. at 194, 311 N.W.2d at 746 [emphasis added].

24. 71 O.S. 1981 § 301.

25. 71 O.S. 1981 § 408(a).

Ken Johnston, Allen, Allen & Johnston, Chickasha, for appellees.

James M. Peters and Randall A. Breshears, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellant.

ALMA WILSON, Justice.

Lester and Myrtle Briscoe own and reside on a 146 acre farm in Grady County. A portion of the farm is devoted to wheat and alfalfa. The Briscoes [appellees] also maintain a small cattle operation on their farm. Grazing areas include love, bermuda and native grasses.

On January 23, 1976, the appellees executed an oil and gas lease to the appellant, Harper Oil Company [Harper]. Pursuant to the terms of the lease, Harper made entry upon the appellees' farm in January, 1980. Harper commenced taking surveys for the location of a drilling site, and shortly thereafter unilaterally selected the site. The well drilled by Harper on the site proved to be a dry hole and Harper abandoned drilling operations in July of 1980. The dry hole was plugged some eight months later. Closure of the reserve pit and further clean up operations on the drilling site were commenced by Harper in May, 1981, one month after appellees instituted this action.

On April 17, 1981, the appellees filed their petition, setting forth three separate causes of action. The first cause of action is founded on contract. The appellees asserted that pursuant to the terms of the oil and gas lease under which Harper entered the subject premises, Harper contracted to pay for damages caused by their operation to growing crops, and that Harper caused damages to growing crops.

The appellees' second cause of action is couched in terms of nuisance. They alleged that by reason of the unreasonable acts of Harper in conducting its oil and gas operations on their land they have been subjected to unreasonable inconvenience, annoyance and interference with the enjoyment of their land for agricultural, grazing and residential purposes. They also alleged subsequent loss of portions of the farm for agricultural and grazing use. Their prayer for relief on this cause of action encompasses damages for both temporary (abatable) and permanent (unabatable) injury.

In their third cause of action, the appellees sought punitive damages by reason of Harper's alleged willful, oppressive and grossly negligent acts in disregard of the fertility and productivity of the soil.

The case was tried to a jury. After hearing all the evidence over a period of several days, the jury was permitted to personally view the premises in question. The jury returned a verdict for the appellee-landowners in the aggregate sum of $42,975. Categorically, the jury awarded $1,600 for damage to growing crops resulting from Harper's drilling operations; $10,500 as damages for annoyance and inconvenience or using more land than reasonably necessary for a longer time than necessary during drilling operations; $24,500 the cost of restoring abatable areas around the well site; and, $6,375.00 as damages for permanent injury to the appellees' farmland.

The trial court entered the jury verdict and awarded the appellees an attorney's fee. Harper appealed. In a divided opinion, the Court of Appeals reversed the jury verdict and remanded the case for a new trial on the theory that appellees' recovery of both permanent and temporary damages constitutes a double recovery. We now

review, by certiorari, the opinion of the Court of Appeals.

The sole issue challenged on certiorari concerns the propriety of the trial court's instructions permitting the jury to return a verdict for damages to include the cost of repairing temporary abatable injuries to the drilling well site, as well as damages for permanent unabatable injury to appellees' farmland. We find no error that would require reversal of the jury verdict.

 The damages in controversy relate exclusively to appellees' second cause of action brought on the theory of private nuisance created or maintained by Harper. It is well established that damages resulting from an oil and gas operation can be recovered in an action brought on a nuisance theory. *Sunray D–X Oil Company v. Brown,* 477 P.2d 67 (Okl.1970); *Tenneco Oil Company v. Allen,* 515 P.2d 1391 (Okl. 1973). Nuisance, as defined at 50 O.S. 1981 § 1, consists in unlawfully doing an act, or omitting to perform a duty, which act or omission annoys, injures, or endangers the comfort, repose, health or safety of others; or, in any way renders other persons insecure in life, or in the use of property. Thus, the term "nuisance" signifies in law such a use of property or such a course of conduct irrespective of actual trespass against others, or of malicious or actual criminal intent, which transgresses the just restrictions upon use or conduct which the proximity of other persons or property imposes. It is a class of wrongs which arises from an unreasonable, unwarranted, or unlawful use by a person or entity of property lawfully possessed, but which works an obstruction or injury to the right of another. "Damage" or "injury", as ordinarily used in nuisance cases is the *result* of the nuisance and permanent, as well as temporary damages, may be recovered for the maintenance of a temporary nuisance. *City of Holdenville v. Kiser,* 195 Okl. 189, 156 P.2d 363 (1945). The rule of damages in any given case brought on the theory of nuisance is determined by whether the injury suffered is permanent or temporary, rather than whether the cause of injury is permanent or temporary. *Sunray D–X, supra.* Accordingly, damages adjudged in an action predicated on a nuisance theory may include temporary *and* permanent injury to land. *Tenneco, supra.* Temporary damages in the context of an oil and gas nuisance are by definition abatable. Damages reasonably incapable of abatement are permanent.

 According to the evidence in the present case, the jury could reasonably determine that the acts complained of by the appellees constituted a private nuisance. The fact that a person or corporation has authority to do certain acts does not give the right to do such acts in a way constituting an unnecessary interference with the rights of others. A license, permit or franchise to do a certain act cannot protect the licensee who abuses the privilege by erecting or maintaining a nuisance. The reasonableness or necessity of the acts complained of are for the jury to decide.

 Likewise, evidence reasonably tending to prove essential damage directly or indirectly by permissible inference is sufficient to sustain a jury verdict. *Peppers Refining Co. v. Spivey,* 285 P.2d 228 (Okl.1955). In this respect, the appellees presented evidence tending to show that the entrance unilaterally chosen by Harper unnecessarily encompassed passage through a large portion of the farm, thereby cutting the grazing area and precluding the use of approximately 25 acres for grazing and agricultural purposes; that Harper's employees drove and parked their heavy equipment and vehicles off the roadways and location; and, caused to be drained from the well head and reserve pit oil and other deleterious substances, and allowed these substances to drain in to the appellees' terraces and creeks. The appellees further testified that Harper created unnecessary noise, annoyance and inconvenience; that Harper refused to fence the well site area causing the appellees to erect a fence around the well site and road area at their own expense for the sake of keeping cattle off the road and out of the drilling area; that appellees were forced to

build another roadway to reach their pasture behind the well site; that Harper cut the terraces of the appellees and did not repair them, causing flooding and erosion; and appellees had to sell cattle early due to loss of pasture. Finally, appellees testified that after the completion of drilling activities, Harper refused and failed to timely empty and close the reserve pit; failed to remove the drilling pad and roadway area; failed to reclaim the pit, pad and roadway areas for agricultural and grazing purposes, and failed to properly dispose of or properly bury drilling mud, trash debris and other substances.

Appellees' soil and conservation expert testified concerning resultant drainage problems and erosion of the soil, permanently damaging the productivity and fertility of the land. In his opinion, it would cost some $91,000 to completely restore the land, but that for approximately $34,000 the excess area taken could be cleaned up to the point that appellees could perhaps use it. Three different witnesses testified that the value of the farm had decreased as a result of the oil and gas activities of Harper. The testimony reflected that the value of the farm had decreased by $36,-500, $29,282, and $20,433 respectively.

We find the evidence reasonably tends to prove essential damage to sustain the jury verdict. While the instructions failed to state that in no event shall the *combined* award of temporary and permanent damages for injury to the land exceed the decreased fair market value of the land, such error, if that it be, was here harmless in nature. The jury awarded the sum of $24,500 for costs of restoring the temporary abatable injury to the well site, plus the sum of $6,375 for permanent unabatable injury to the farm. The combined sum of the temporary and permanent damages, $30,875, does not exceed the evidence reflecting that the value of the farm had decreased up to $36,500.

We likewise find that the trial court committed no error in awarding attorney's fees to the appellees pursuant to 12 O.S. 1981 § 940 A:

"In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action."

The action now on review was founded upon the civil theory of nuisance. The appellees sought to recover damages for unreasonable injury to their land by reason of Harper's unintentional negligent acts and/or Harper's intentional willful acts. Likewise, it is clear that the appellees prevailed below. Finally, the trial court followed established guidelines in assessing the amount of the award. *See Oliver's Sports Center, Inc. v. National Standard Insurance Company*, 615 P.2d 291 (Okl. 1980); *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659 (Okl.1979). Testimony by an experienced oil and gas attorney established that a reasonable attorney's fee in cases similar to the case at bar would be approximately $21,800. The evidence further established that a total of 165½ attorney hours were expended on the case; that the hourly rate normally charged by counsel was $100 per hour in-court and $75 per hour out-of-court; that the customary fee arrangement in a case of this type would amount to 50% of the recovery. Based upon the hourly compensation computed at $12,175 plus a 50% bonus calculated upon the hourly rate, *See Oliver Sports, supra*, the trial court awarded an attorney's fee in the amount of $18,262.00. We find no error.

The opinion of the Court of Appeals is vacated and the trial court's entry of judgment on jury verdict for landowners is reinstated.

DOOLIN, V.C.J., and LAVENDER, HARGRAVE and KAUGER, JJ., concur.

SIMMS, C.J., and HODGES, OPALA and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting.

The instructions contained a preliminary statement of the issues as follows:

"1. The amount of damages to Plaintiffs' growing crops, including grasses, resulting from Defendant's drilling operations, not to exceed $2,000, the amount sued for.

2. Whether or not the Defendant's drilling operations caused a private nuisance by:

a) Creating annoyance and inconvenience to Plaintiffs; or,

b) Using more land than reasonably necessary for a longer time than reasonably necessary;

c) And, the amount of damages, if any, resulting therefrom, not to exceed $25,000, the amount sued for.

3. Should you find Defendant's drilling operations created a private nuisance, then you should determine the amount of damages for the reasonable cost of abating the nuisance by restoring the site to its former condition, such amount not to exceed $34,000, the amount sued for.

4. Whether or not Defendant's drilling operations permanently damaged Plaintiffs' land in an amount not to exceed $36,500, the sum sued for."

The court then gave instruction No. 20. as follows:

"Under Issues No. 2, as previously outlined in these Instructions, if you find Plaintiffs have proved that Defendant's drilling operations caused a private nuisance by:

a) Creating annoyance and inconvenience to plaintiffs; or,

b) Used more land than reasonably necessary for a longer time than reasonably necessary;

As defined in these Instructions, then you should determine the amount of damages, if a· ·, proximately caused from Defendant's drilling operations, in a sum not to exceed $25,000, the amount sued for.

Under Issue No. 3, as previously outlined to you in the Instructions, should you find that Plaintiffs have proved Defend-ant's drilling operations created a private nuisance, as defined in these Instructions, then you should determine the amount of damages, if any, for the reasonable cost of abating the nuisance by restoring the site to its former condition, such amount not to exceed $34,000, the amount sued for.

Under Issue No. 4, as previously outlined to you in these Instructions, you should determine whether or not Plaintiffs have proved that Defendant's drilling operations permanently damaged Plaintiffs' land in an amount not to exceed $36,500, the amount sued for.

However, should you find from your consideration of all of the evidence and the Instructions contained herein, that the Plaintiffs have not met their burden of proof on the issue presented, then your verdict should be for the Defendant."

The defendant had objected as follows:

"Comes now the Defendant and objects to Instruction # 20 on the grounds that it does not fully and accurately set forth the laws of the State of Oklahoma with regard to the proper measure of damages in this case.

"Further, the Defendant asserts that the Instruction, as proposed, is misleading and will allow the jury, based thereon, to return a verdict for both restoration of the surface and for diminution in value. That the Instruction, as charged, does not—does not adequately set forth the law of the State of Oklahoma and should be denied—or should not be given.

"The Defendant also objects to the first page of the Instructions, the general charge, section—or paragraphs designated 2, 3 & 4 for the same reason, that it does not accureately (sic) reflect the law of the State of Oklahoma, it is misleading and allows the jury to return damages for both diminution in property and restoration. It does not adequately set forth the law with regard to nuisance."

The jury returned its verdict in favor of the plaintiffs as follows:

| Issue 1 | Crop Damage | $1,600.00 |
|---------|-------------|-----------|
| Issue 2 | | 10,500.00 |
| Issue 3 | | 24,500.00 |
| Issue 4 | | 6,375.00 |
| | | $42,975.00 |

Defendant complains that the instructions failed to correctly state the law, and misled the jury into awarding damages both for the cost of restoring the land and its diminution in value caused by the defendants drilling operation. No instruction made clear that double recovery was not permissible. Because of the way the instructions treat issues No. 3 (cost of restoration) and No. 4 (permanent damages), I must dissent from the opinion which affirms. I have no quarrel with the handling of No. 1 (crop damage) or No. 2 (nuisance).[1]

Our law on how to arrive at damages for injury to real property was pronounced before statehood. In *Enid & A. Ry. Co. v. Wiley*[2] this court held:

"On the trial of the issues made by the pleadings the evidence as to the amount of damages should be confined to the cost of restoring the land to its former condition; also to the reasonable market value of the entire tract affected by the injuries, both immediately before the doing of the injurious acts and immediately after; and, if the diminution in value caused by the work done by the railway company is less than the cost of restoring the land, then such diminution is the true measure of recovery for the permanent injury to the land. On the other hand, if the cost of repairing the injury, or of restoring the land to its former condition, is less than the diminution in value, then such cost is the measure of recovery for such injuries. To this sum, when determined, may be added such sum as will reasonably compensate for the loss of the use of the portion injured during the time the railway company deprived the owners of its use."[3]

The Court of Appeals of New York adopted the rule in 1892 in *Hartshorn v. Chaddock*.[4] The Court said:

"[W]hen the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages."[5]

Illinois accepted the rule in 1906 in *Swanson v. Nelson*.[6] In discussing this approach to determining the damages for injury to property, the court stated:

"The result of this reasonable view which has been taken by almost all courts of last resort where they have had occasion to pass on the matter has been to establish a rule that *makes the measure of damages, in cases of injury to real estate, the cost of restoration or the difference in market value, as one or the other is the less amount*."[7] (emphasis added)

---

1. In a previous instruction (No. 14, part 2) the court had correctly instructed as to the method of determining damage to land if permanent, that being the difference in fair market value before and after. The first part of No. 14 on method of determining damages if temporary is incomplete and inaccurate. It will not serve as ground for reversal, however, because it was given as requested by defendant. It reads:

 "1. If you determine the damages to the real property to be temporary in nature, the damage is the reasonable cost of repairing the damage or restoring the property to its former condition if the cost of restoration is less than the fair market value of the property before and after the injury thereto, as described in Paragraph 2 below."

2. 14 Okl. 310, 78 P. 96 (1904); See also *Ellison v. Walker,* 281 P.2d 931, 932–3, (Okl.1955).

3. Id. 78 P. at 99–100.

4. 135 N.Y. 116, 31 N.E. 997 (1892).

5. Id. 31 N.E. at 998.

6. 127 Ill.App. 144 (1906).

7. Id. at 149.

Numerous states have expressly adopted this rule, including California,[8] Idaho,[9] Kentucky,[10] Michigan,[11] Missouri,[12] Pennsylvania[13] and Washington.[14] In essence these and other jurisdictions recognize the rule that when the reasonable cost of repairing the injury to real property or the cost of restoring the land to its former condition is less than what is shown to be the diminution in the market value of the property as a whole by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the diminution is the true measure of damages.

Corollary to this rule is the proposition that a party cannot have a recovery for permanent depreciation, or diminution in value, and also for the cost of restoration of the same land to its former condition.[15] By statute our law limits damages to no more than plaintiff would have gained had defendant fully performed all obligations.[16]

To allow damages for both diminution in value and the cost of restoration for the same injury to property amounts to a double recovery,[17] often mistakenly referred to as "double damages".[18] These are inconsistent remedies and both should not be allowed.[19]

It appears that the majority today has come under the belief that this rule has been modified in nuisance cases. *Tenneco v. Allen* [20] is cited for the proposition that damages for temporary and permanent damages may be recovered on a nuisance theory. The Court's second syllabus says:

"2. Damages adjudged in an action predicated on a nuisance theory may include clean-up costs of oil and gas lessee's surface impediments not necessary for its operation, damages for use of land by lessee for more than a reasonably necessary period of time for its operations, for lessee's unnecessary use of land area in its operations, and for temporary and permanent injury to the land."

*Tenneco* cites *Lanahan v. Myers* [21] which is a most instructive case and one whose holding has apparently brought us to our present posture. The plaintiff sued his oil and gas lessee for using an unreasonable amount of surface, temporarily and permanently damaging his land. Note this court's disposition:

---

**8.** *Mozzetti v. City of Brisbane,* 67 Cal.App.3d 565, 136 Cal.Rpt. 751, 757 (1973).

**9.** *Alesko v. Union Pc. R. Co.,* 62 Idaho 235, 109 P.2d 874, 877 (1941).

**10.** *Edwards & Webb Const. Co., Inc. v. Duff,* 554 S.W.2d 909 (Ky.App.1977).

**11.** *Bluemlein v. Szepanski,* 101 Mich.App. 184, 300 N.W.2d 493, 496–497 (1980).

**12.** *Curtis v. Fruin-Colnon,* 363 Mo. 676, 253 S.W.2d 158, 164 (1952); *Decker v. J.E. Siben Construction Co.,* 492 S.W.2d 155, 157 (Mo.App. 1975).

**13.** *Rabe v. Shoenberger Coal Co.,* 213 Pa. 252, 62 A. 854, 855 (1906).

**14.** *Burr v. Clark,* 30 Wash.2d 149, 190 P.2d 769, 774 (1948).

**15.** *Illinois Cent. R. Co. v. Elliott,* 17 Ala.App. 134, 82 So. 582, 585 (1919); *Atlantic Coast Line R. Co. v. Saffold,* 130 Fla. 598, 178 So. 288, 290 (1938); 25 C.J.S. Damages § 84.

**16.** 23 Okla.Stat.1981 § 96.

**17.** Double Recovery. Recovery which represents more than the total maximum loss which all parties have sustained. Black's Law Dictionary.

**18.** Double Damages. Twice the amount of actual damages as found by the verdict of a jury allowed by statute in some cases of injuries by negligence, fraud or trespass. Black's Law Dictionary.

**19.** *Illinois Cent. R. Co. v. Elliott,* supra note 15; *Atlantic Coastline R. Co. v. Saffold,* supra note 15; *Ellis v. New Orleans Great Northern R. Co.,* 169 La. 797, 126 So. 64, 67 (1930); *Paper Products Mach. Co. v. Safepack Mills,* 239 Mass. 114, 131 N.E. 288 (1921); *Kugel v. Village of Brookfield,* 322 Ill.App. 349, 54 N.E.2d 92, 96 (1944); *Barker v. Publisher's Paper Co.,* 78 N.H. 571, 103 A. 757 (1918); *Strickland v. McElveen,* 20 Ga. App. 320, 93 S.E. 24 (1917); *Pickens v. Harrison,* 151 Tex. 562, 252 S.W.2d 575 (1952); *Beaty v. N.W. Electric Power Cooperative,* 296 S.W.2d 921 (Mo.App.1956).

**20.** 515 P.2d 1391 (Okl.1973).

**21.** 389 P.2d 92 (Okl.1964).

"We next come to defendant's contention that the damages concerning this first cause of action were not established with any degree of certainty. Plaintiffs presented evidence that the reasonable and necessary cost of filling in the unused pits and repairing the roads which were causing temporary damage to plaintiffs' land amounted to $430. Concerning permanent damage from excess roads and from salt water and oil which was permitted to flow over his land, one of plaintiffs testified that five to seven acres were ruined. *This latter amount was in addition to the pits and roads temporarily damaged.* He testified that the fair market value of his land was $100 per acre. Therefore the evidence would have sustained an award of $430 for temporary damages and $500 to $700 for permanent damage. Defendant did not present any evidence to dispute these damages. And he did not complain about the instructions to the jury. The jury's verdict of $750 on this cause of action was sufficiently supported by competent evidence." [22] (emphasis added)

*Lanahan* thus gives rise to the proposition that both temporary and permanent damages may be recovered. But it does not modify *Enid & A. Ry. Co.* Under its evidence "this latter amount [the five to seven acres ruined] was in addition to the pits and roads temporarily damaged." [23] That is not double recovery. There could be no objection to allowing recovery for correctable, temporary damage to one portion of a leased tract in addition to permanent, diminished value damage to another portion of the tract, so long as the jury was properly instructed to avoid duplication of damages. But in this case no such caution was imparted. Our jury could have returned a verdict for $34,000 under No. 3, the cost of abatement, and added to that an award of $36,500 as permanent diminution in value and been in perfect compliance

with the instructions. Up to now such a double recovery has been universally condemned. [24]

To discover how we find ourself in this position we must reexamine *Tenneco v. Allen.* [25] There the landowner in his first cause of action claimed

1) The lessee used too much of the surface, depriving him of use, and allowed substances to flow over portions of his land not reasonably necessary, causing temporary and permanent damage. He sought $4,000 for this.

2) The lessee failed to clean up, leaving things behind that amounted to a nuisance, which could be cleaned up for $3,000.

In his second cause of action the plaintiff pleaded allegations of inconvenience to him by reason of the defendants nuisance, and sought $2,000 therefor.

The plaintiff offered evidence of loss of market value ($2,500 to $4,000) for escaping oil and salt water, and the cost of the "necessary clean-up work" ($3,000–$5,000).

The jury's verdict was $5,150 on the first cause of action and $1,000 on the second. The defendant did not object to giving of instructions other than the court's failure to give his requested No. 3, which would not have addressed the problem of "double recovery".

I cannot agree that this Court in *Tenneco* has consciously repealed the ancient prohibition against allowing double recovery, but that appears to be what the majority has done today, over objection to an instruction timely made to the trial court. If *Tenneco v. Allen* [26] has authorized double recovery of damages then it should be overruled in so far as it has done so.

I would affirm *Lanahan* and the language of *Tenneco* in its second syllabus insofar as they stand for the proposition that temporary and permanent damages may be recovered for injury to real estate

22. Id. at 93.

23. Id.

24. Supra note 19.

25. Supra note 20.

26. Id.

in the same case, provided that (1) the evidence supports a finding that temporary damage to one part is in addition to permanent damage to another part (as in *Lanahan*) and (2) the instructions prevent a double recovery of temporary and permanent damage for injury to the same portion of land. Because nothing in the instructions informed the jury that they should not give double recovery, and because the jury awarded $24,500 for restoration costs plus $6,375 for permanent loss of value, I would reverse and remand for a new trial with proper instructions.

I am authorized to state that SIMMS, C.J., and HODGES and OPALA, JJ. concur in the views expressed herein.